**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Robert G. BEDORE, a/k/a Bedord,**
**Defendant-Appellant.**

**No. 71–2292.**

United States Court of Appeals,
Ninth Circuit.

Feb. 9, 1972.

William H. Mullen (argued), Seattle, Wash., for defendant-appellant.

Douglas D. McBroom, Asst. U. S. Atty. (argued), Stan Pitkin, U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before MERRILL and HUFSTEDLER, Circuit Judges, and PREGERSON,* District Judge.

HUFSTEDLER, Circuit Judge:

Bedord appeals from his conviction for a violation of 18 U.S.C. § 1001

---

* Hon. Harry Pregerson, United States District Court Judge for the Central District of California, sitting by designation.

(knowing false statements "in any matter within the jurisdiction of any department or agency of the United States").

On June 19, 1970, Special Agent Henry of the Federal Bureau of Investigation went to Bedord's home to locate Bedord for whom a subpoena was outstanding. The subpoena directed Bedord to appear at the trial of one Milford Cook. The subpoena was in the possession of a deputy marshal who had earlier called when Bedord was not at home. When Bedord answered the door, Henry identified himself as an FBI agent, told Bedord that he was looking for Robert G. Bedord for service of a subpoena, and asked him his name. Bedord said he was Tom Halstead, who was, in fact, Bedord's roommate. Henry asked him to tell Bedord to call the United States Attorney when Bedord contacted "Halstead."

■ We hold that Congress did not intend section 1001 to apply to Bedord's giving a false name to Henry, because his response was not within the class of false statements that section 1001 was designed to proscribe.

Section 1001 provides:

"*Whoever, in any matter within the jurisdiction of any* department or *agency of the United States knowingly and willfully* falsifies, conceals or covers up by any trick, scheme, or device a material fact, or *makes any false,* fictitious or fraudulent *statements* or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, · shall be fined not more than $10,000 or imprisoned not more than five years, or both." (Emphasis added.)[1]

If the italicized portion of section 1001 were read literally, virtually any false statement, sworn or unsworn, written or oral, made to a Government employee could be penalized as a felony. Thus read, section 1001 would swallow up perjury statutes and a plethora of other federal statutes proscribing the making of false representations in respect of specific agencies and activities of Government.[2] Extension of section 1001 to its literal breadth, however, cannot be justified by its legislative history. Because its history is detailed in United States v. Bramblett (1955) 348 U.S. 503, 504–08, 75 S.Ct. 504, 99 L.Ed. 594, and United States v. Gilliland (1941) 312 U.S. 86, 93–95, 61 S.Ct. 518, 85 L.Ed. 598, we simply sketch the highlights.

Section 1001 originated more than 100 years ago in a statute drawn to penalize persons who made fraudulent claims for money against the Government. The statute was amended in 1934 "to embrace false and fraudulent statements or representations where these were knowingly and willfully used in documents or

---

1. We are not here concerned with those portions of § 1001 that penalize the use of false, fraudulent, or fictitious writings. Thus, certain previous decisions of this court are not helpful. *See* Neely v. United States (9th Cir. 1962) 300 F.2d 67, cert. denied, 369 U.S. 864, 82 S.Ct. 1030, 8 L.Ed.2d 84 (materially altered lease given to agents of the Internal Revenue Service investigating defendant's income tax liability); Brandow v. United States (9th Cir. 1959) 268 F.2d 559 (falsehoods in an affidavit filed with the Treasury Department); Pitts v. United States (9th Cir. 1959) 263 F.2d 353, cert. denied, 360 U.S. 935, 79 S.Ct. 1457, 3 L.Ed.2d 1547 (false statements in a personnel security questionnaire filed with the Atomic Energy Commission and certified by defendant); Cohen v. United States (9th Cir. 1953)

201 F.2d 386, cert. denied, 345 U.S. 951, 73 S.Ct. 864, 97 L.Ed. 1374 (false financial statement signed by defendant and delivered to Treasury Department agents conducting income tax investigations).

2. Judicial and congressional restiveness about the potential reach of § 1001 was one of the factors that led to the creation of The National Commission on Reform of Federal Criminal Laws. 1 U.S. Reform of Criminal Laws Nat'l Comm'n, Working Papers (1970) at 668–69. The Commission's proposed revision of § 1001 and related statutes eliminates the discrepancies among these statutes and clarifies the law. Under the proposed revisions, Bedord's false statement would be unmistakably excluded. *See* Study Draft, Federal Criminal Code (1970) §§ 1352–1354, and comments thereto, pp. 122–26.

affidavits 'in any matter within the jurisdiction of any department or agency of the United States.' In this, there was no restriction to cases involving pecuniary or property loss to the government. The amendment indicated the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." (United States v. Gilliland, *supra*, 312 U.S. at 93, 161 S.Ct. at 522.) The statute was cast in its present form in 1948 without substantive revision. (United States v. Bramblett, *supra*, 348 U.S. at 508, 75 S.Ct. 504, 99 L.Ed. 594.)

 From the statutory history, it is evident that section 1001 was not intended to reach all false statements made to governmental agencies and departments, but only those false statements that might support fraudulent claims against the Government, or that might pervert or corrupt the authorized functions of those agencies to whom the statements were made. Typical of the kind of statements that are within the purview of section 1001 are false reports of crime made to federal law enforcement agencies that may engender groundless federal investigations. (United States v. Adler (2d Cir. 1967) 380 F.2d 917, cert. denied, 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602 (false report of bribery made to FBI agent) ;[3] Tzantarmos v. United States (9th Cir. 1968) 402 F.2d 163, cert. denied, 394 U.S. 966, 89 S.Ct. 1312, 22 L.Ed.2d 569 (1969) (false statement under oath to the Immigration and Naturalization Service to secure voluntary departure).)

The statute was not intended to embrace oral, unsworn statements, unrelated to any claim of the declarant to a privilege from the United States or to a claim against the United States, given in reponse to inquiries initiated by a federal agency or department, except, perhaps, where such a statement will substantially impair the basic functions entrusted by law to that agency. (*Cf.* Paternostro v. United States (5th Cir. 1962) 311 F.2d 298; United States v. Stark (D.Md.1955) 131 F.Supp. 190.)

Therefore, Bedord's false statement of identity given to Henry is outside the scope of section 1001.

The judgment is reversed with directions to dismiss the indictment.

---

**3.** Friedman v. United States (8th Cir. 1967) 374 F.2d 363 held that § 1001 did not apply to an unsworn written statement given to the FBI falsely charging a state patrolman with assault and battery. The *Friedman* result was primarily predicated on the court's restrictive reading of the term "jurisdiction" as used in § 1001, a position also taken by Circuit Judge Pickett, sitting as a district judge, in United States v. Levin (D.Colo.1953) 133 F.Supp. 88. *Adler* did not oppose *Friedman* on its alternative theory that § 1001 did not apply to statements made to federal agents during the course of a criminal investigation.

Section 1353 of the 1970 proposed Criminal Code expressly deals with false reports of this kind. *Supra* note 1.