UNITED STATES, Appellee,

v.

Jeff L. DAVENPORT, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 35,798.
NCM 78-0103.

U. S. Court of Military Appeals.

Oct. 27, 1980.

For Appellant: *Commander Sebastian Gaeta, Jr.*, JAGC, USN (argued).

For Appellee: *Lieutenant William Eric Minamyer*, JAGC, USNR (argued); *Commander T. C. Watson, Jr.*, JAGC, USN, *Lieutenant Christine M. Yuhas*, JAGC, USN (on brief); *Lieutenant Commander N. P. DeCarlo*, JAGC, USN, *Lieutenant J. G. Van Winkle*, JAGC, USNR.

*Opinion*

EVERETT, Chief Judge:

Pursuant to his pleas, the appellant was convicted by special court–martial of making a false official statement, in violation of Article 107, Uniform Code of Military Justice, 10 U.S.C. § 907.[1] That specification alleges that on August 23, 1977, the appellant, with intent to deceive, made to Staff Sergeant R. A. Welch a false official statement–namely, "My name is Ricky John-

1. Additionally, the appellant was convicted, pursuant to his pleas, of absence without leave (3 specifications), disobedience of a superior commissioned officer, disobedience of a superior noncommissioned officer, assault on a superior noncommissioned officer then in the execution of his office, and escape from custody, in violation of Articles 86, 90, 91, and 95, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 890, 891, and 895, respectively. For these transgressions, the appellant was sentenced to a bad–conduct discharge, confinement at hard la-

bor for 3 months, forfeiture of $150 pay per month for 3 months, and reduction to the lowest enlisted grade. The convening authority approved this sentence, but he remitted all confinement in excess of 25 days. The United States Navy Court of Military Review set aside the conviction for disobeying a superior noncommissioned officer, but in all other respects that tribunal affirmed the findings below. Reassessing the sentence in light of that action, the court affirmed the sentence without change.

son."[2] The appellant now asserts that his plea was improperly accepted by the military judge because the record of trial does not reflect a sufficient factual basis for determining whether his admitted conduct constituted this offense. *See United States v. Care,* 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969); *see also,* para. 70*b,* Manual for Courts–Martial, United States, 1969 (Revised edition). Specifically, he argues that Article 107[3] does not extend to the statement which he made to Sergeant Welch, because it was not an official statement within the meaning of this codal proscription. *See United States v. Osborne,* 9 U.S.C.M.A. 455, 26 C.M.R. 235 (1958). We do not agree.

### I

In a providency hearing the military judge discussed with appellant each of the several charges to which he was pleading guilty. Therein it was admitted by appellant that on August 18, 1977, he had escaped from the custody of a Marine corporal before he had been released by proper authority. At the time, Davenport said he "was with my chaser going back to Pearl Harbor to the Confinement Center . . . to the Correctional Center." The assault on Staff Sergeant Welch had occurred "when Staff Sergeant WELCH came down to apprehend me and I broke loose from him trying to get away and I hit Staff Sergeant WELCH in the stomach." Although Welch was dressed in civilian clothes at the time, appellant knew that he was a staff sergeant who worked at the Correction Center.

Before appellant struck Staff Sergeant Welch, the sergeant had asked his name "and I gave him a false name and told him I was Ricky Johnson." Welch was there to make sure Davenport was the right person

to be brought back into military custody and to return him to such custody. The sergeant was acting "in a governmental function" in questioning appellant about his identity and, according to appellant's belief, "was discharging the functions of [the] office that he was charged to do." And "the question from Staff Sergeant R. A. Welch was in an official capacity to find out" who appellant was. Davenport knew the statement was false when he made it and knew that his own name was not Ricky Johnson.

### II

In *United States v. Care, supra,* we held:

In any event, the record of trial for those courts–martial convened more than thirty days after the date of this opinion must reflect not only that the elements of each offense charged have been explained to the accused but also that the military trial judge or the president has questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make clear the basis for a determination by the military trial judge or president whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty. *United States v. Rinehart,* 8 U.S.C.M.A., 402, 24 C.M.R. 212; *United States v. Donohew,* 18 U.S.C.M.A., 149, 39 C.M.R. 149.

In other words, what this Court required in *Care* was, in pertinent part, an inquiry by the military judge of the accused into the facts and circumstances surrounding the act or acts charged in order to establish a factual basis for the judge's conclusion that the accused is, in fact, guilty. This requirement was promulgated because, unlike civil-

---

2. The appellant was convicted under another specification of striking Staff Sergeant Welch in the stomach with his elbow on the same date while Welch was in the execution of his office. *See* n. 1, *supra.* In still another specification, the appellant was charged with having resisted apprehension by Welch and Lance Corporal Young, again on the same date, but this charge was withdrawn.

3. Article 107, UCMJ, 10 U.S.C. § 907, states:

 False official statements

 Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court–martial may direct.

ian practice, Article 45, UCMJ, 10 U.S.C. § 845, requires that a guilty plea be in accordance with actual facts. *United States v. Moglia*, 3 M.J. 216 (C.M.A. 1977); *United States v. Johnson*, 1 M.J. 36 (C.M.A. 1975). But *Care* established no requirement—nor has any subsequent decision of this Court—that any witness be called or any independent evidence be produced to establish the factual predicate for the plea. Thus, if the specification alleges, within its four corners, all elements of the offense in question; if the accused pleads guilty to that specification; and if the inquiry of the accused indicates not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea, then the plea may be accepted by the military judge as provident. If the accused sometime during the proceeding sets up matter which is inconsistent with a plea of guilty, then the plea must be rejected. Article 45, *supra. See United States v. Moglia, supra; United States v. Shackelford*, 2 M.J. 17 (C.M.A. 1976). But evidence from outside the record will not be considered by appellate authorities to determine anew the providence of the plea. *Cf. United States v. Hebert*, 1 M.J. 84, 86 (C.M.A. 1975). Under *Care*, providence of a tendered plea of guilty is a matter to be established one way or the other at trial.

With this in mind, we proceed to consider whether the information revealed by the appellant during the *Care* inquiry at his trial was legally sufficient to sustain the trial judge's determination that all elements of the offense at issue were established as a matter of fact. Particularly, in light of the appellant's assignment of error, we are concerned with whether the inquiry of the appellant adequately established that the statement to Welch as to the appellant's identity was an official statement within the meaning of Article 107.

4. *United States v. Arthur*, 8 U.S.C.M.A. 210, 211, 24 C.M.R. 20, 21 (1957). In its reference to "arrest," the Court in *Arthur* may have been equating the term with "apprehension," rather

## III

In *United States v. Arthur*, 8 U.S.C.M.A. 210, 24 C.M.R. 20 (1957), a captain observed the accused strike a girl in a violent manner. The officer "placed . . . [the accused] under arrest," whereupon, as the officer later testified at trial, "he told me I couldn't place him under arrest, *he was a member of the Air Police* and he knew the law." *Id.* The italicized part of the accused's statement, which was false, led to a charge under Article 107.

Although conceding that the officer could arrest Arthur on "probable cause,[4] the Court concluded that the accused's false statement to the officer had not concerned any "governmental function." A distinction was drawn "between the status rights and duties of an officer and his action in carrying out a military duty." *Id.* at 211, 24 C.M.R. at 21. However, the Court emphasized that the officer "was not acting as a law enforcement agent," and pointed out, "The important circumstance is that he was acting by virtue of his status, and not discharging the functions of a particular office." *Id.*

■ In the case at bar, the *Care* inquiry indicates that the noncommissioned officer, Staff Sergeant Welch, was acting in the execution of his duties with the Correction Center. Moreover, a "governmental function" was involved—namely, to bring Davenport back to military control after he had successfully escaped from custody.

■ The Court has held that statements made to a law enforcement agent conducting an investigation of a suspected crime are not for that reason alone "official." *United States v. Aronson*, 8 U.S.C.M.A. 525, 25 C.M.R. 29 (1957); *United States v. Osborne supra.* If, however, the suspect has some independent duty to account—for instance, if he is the custodian of government funds—the requisite officiality does exist. *United States v. Aronson, supra.*

than using it in its more technical sense. *Compare* Article 7(a), UCMJ, 10 U.S.C. § 807(a), *with* Article 9(a), UCMJ, 10 U.S.C. § 809(a).

If by giving an account a suspect would incriminate himself, how can his obligation to account be reconciled with the protection granted by Article 31, UCMJ, 10 U.S.C. § 831? In *United States v. Aronson, supra,* at 529–30, 25 C.M.R. at 33–34, the Court answered in this manner:

The òbligation to account for what is entrusted to one is independent of Article 31. If the duty to account is affected by Article 31 it is only to the extent that the accused cannot be compelled to make a statement about the account. But he certainly remains liable, civilly or criminally as the case may be, for misconduct in regard to the funds entrusted to him. AFR 176–8, paragraphs 20, 21; *United States v. Sicley,* 6 USCMA 402, 20 CMR 118; *United States v. Lamerand,* 4 USCMA 702, 16 CMR 276; *United States v. Valencia,* [1 USCMA 415, 4 CMR 7]. Surely, Congress did not intend Article 31 to be a license to lie. The legislative background of the Article shows that it was intended to protect persons accused or suspected of crime who might otherwise be at a disadvantage because of the military rule of obedience to proper authority. *Gibson v. United States,* 3 USCMA 746, 14 CMR 164. It would be a perversion of that intention to construe Article 31 as a protection against intentional and willful deception in accounting for Government funds. The accused here had a choice. He could refuse to make any statement to the agent or he could account for his management of the fund. If he chose the first course, he would be acting in accordance with and under the protection of Article 31. But, if he chose the second alternative and spoke, he spoke in accordance with his "legal obligation." Cf. *United States v. Levin,* [133 F.Supp. 88 (D Colo) (1953)]. Whether judged from the Government's position or from the accused's standpoint, the questions asked by the agent and the answers given by the accused were "official" within the meaning of Article 107.

 When a serviceperson is asked his name by another serviceperson who has the specific duty of returning him to military control, there exists, in our view, an "obligation to account" within the meaning of *Aronson.* That obligation provides the officiality requisite for prosecution under Article 107. However, the required accounting is not for revenues that have been entrusted to the person from whom the accounting is sought. Instead, it is for his personal services owed to the Armed Forces. Identification of oneself is part of that accounting because, without the ability to identify its personnel, a military organization cannot utilize those personnel. False identification of himself by a service member prevents proper utilization of the services which he has obligated himself to provide. In so doing, the false identification impedes the "governmental function" of maintaining armed forces—a function that cannot be performed unless those forces know who are their members and what are their whereabouts.

The case is clearer, of course, when a service member falsely identifies himself to receive some benefit or privilege that he could not otherwise receive from the military establishment, such as access to an area to which he would otherwise be denied access. However, the benefit to him of avoiding obligations to which he has earlier committed himself is, in our view, adequate for invoking Article 107.

The importance to the Government of having present at the appointed place and time those persons who, by assuming military status, have obligated themselves to be present is attested to by the legislative prohibition of conduct which repudiates that obligation. *See* Articles 85, 86, and 87, UCMJ, 10 U.S.C. §§ 885, 886, 887, respectively. Indeed, apart from military personnel, no group of American citizens is subject to punishment for quitting a job or for not being present to do that job.

Statements from a service member as to prior activities or as to previous absences from his duties do not meet the tests for officiality. They concern prior offenses and the investigation of those offenses. On the other hand, a current misrepresentation of

identity, which prevents or impedes return to military control and the receipt of new duties, tends to impede an ongoing "governmental function."

## IV

Even when there is a duty to account, so that any statements made to law enforcement personnel will be "official" for purposes of Article 107, the accused still retains the shield of Article 31. In *United States v. Aronson, supra,* the Court did not in any way question the need for Aronson to receive warnings of his right to remain silent, even though it found that he was subject to an "obligation to account."

Of course, Staff Sergeant Welch did not use force or threats to compel appellant to identify himself. Thus, Article 31(a) of the Code is not involved in the case at hand. However, the applicability of Article 31(b) and its warning requirement cannot be so easily dismissed. In *United States v. Wilson,* 2 U.S.C.M.A. 248, 8 C.M.R. 48 (1953), very brief questioning of a group of soldiers was adequate to trigger Article 31(b). Here Sergeant Welch's inquiry of Davenport would surely suffice for this purpose.

■ In some recent cases the Supreme Court has held that, even though a witness before a grand jury enjoys the privilege against self–incrimination, he may nonetheless be prosecuted for perjury because of false testimony he gives. Procedural failures in warning the witness of his rights do not shield him from prosecution for perjury. *United States v. Wong,* 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977); *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). *Cf. United States v. Howard,* 5 U.S.C.M.A. 186, 17 C.M.R. 186 (1954). This result accords with this Court's pronouncement in *Aronson* that "[s]urely, Congress did not intend Article 31 to be a license to lie." *United States v. Aronson, supra* at 529, 25 C.M.R. at 33. However, the express wording of Article 31(d) precludes such a result in the military justice system. That article specifically provides: "No statement obtained from any person in violation of [Article 31] . . .

may be received in evidence against him in a trial by court–martial." This language leaves no leeway to receive such evidence against an accused in a prosecution under Article 107 for making such a statement, which proved to be false.

■ Nonetheless, Article 31(b) seems inapplicable to the case at bar. Obviously if the accused's false recital of his identity was a false statement for purposes of Article 107, it was also a "statement" within the meaning of Article 31(b). However, we construe Article 31(b) as applicable only to "any statement *regarding* the offense of which he is accused or suspected." Article 31(b). (Emphasis added). *See United States v. Howard, supra.* A statement of a person's identity is not "regarding" any offense. Indeed, one's identity is not an element of a crime; nor does it tend to prove a crime. In a criminal trial the prosecutor must establish that a specific person committed the crime. But the name of that person is not important; he could be tried under an alias or under a "John Doe" warrant without affecting the validity of the proceedings.

Chief Justice Burger has noted that "[d]isclosure of name and address is an essentially neutral act." *See California v. Byers,* 402 U.S. 424, 432, 91 S.Ct. 1535, 1540, 29 L.Ed.2d 9 (1971) (plurality opinion). In the military context a military address might fall in a different category from a serviceperson's name, since the address–if it is the address of a military organization–may imply that there is an obligation to be present with that unit for the performance of military duties.

Since we are unconvinced that Congress intended to apply the warning requirement of Article 31(b) to a request for one's name, *cf. United States v. Howard, supra,* we conclude that Davenport cannot benefit from Staff Sergeant Welch's omission to warn him of his Article 31(b) rights before seeking to determine his identity.

## V

Several cases out of the federal civilian courts expound the doctrine of the "excul-

patory no," under which a person who gives merely a negative response to the question of a law enforcement agent cannot be prosecuted under 18 U.S.C. § 1001. *See, e. g., United States v. Abrahams*, 604 F.2d 386, 394–95 (5th Cir. 1979); *United States v. Bedore*, 455 F.2d 1109 (9th Cir. 1972); *Paternostro v. United States*, 311 F.2d 298 (5th Cir. 1962). *See also United States v. King*, 613 F.2d 670 (7th Cir. 1980); *United States v. Rose*, 570 F.2d 1358 (9th Cir. 1978). Since there is a "general analogy" between 18 U.S.C. § 1001 and Article 107, *see United States v. Aronson, supra*, federal court interpretations of that provision are quite persuasive.

Of course, some of the opinions discussing the "exculpatory no" doctrine emphasize that it "is limited to simple negative answers, . . . without affirmative discursive falsehood." *United States v. King, supra* at 674. Accordingly, it is arguable that in the case at hand the doctrine is inapplicable because appellant ventured beyond mere denial of his identity and falsely represented himself to be someone else.

However, in *United States v. Bedore, supra*, the Court of Appeals applied the "exculpatory no" doctrine in a contrary manner. There the defendant, who was being sought by an FBI agent, gave the agent a false name. However, even *Bedore*, which has been cited frequently, may be distinguished. That defendant was under no legal obligation to identify himself to the investigative agent. He had no special obligation to be present to perform duty, as does the defendant here. Accordingly, no "governmental function" was impeded by *Bedore's* concealment of his true identity.

■ While, like 18 U.S.C. § 1001, Article 107 should be construed narrowly and the "exculpatory no" exception should be recognized, we conclude that the case at bar does not fall within the exception. The very circumstances that made Davenport's statement official for purposes of Article 107 are sufficient to distinguish this case from *Bedore*. In short, appellant's false statement to Staff Sergeant Welch–a statement which went beyond a mere denial–tended to impede a "governmental function." Since Davenport had a duty to account to the armed forces for his time and whereabouts so that he could be utilized for military service, his falsehood impeded performance of that duty.

## VI

The decision of the United States Navy Court of Military Review is affirmed.

COOK, Judge (concurring in the result):

The issue here is whether the accused's plea of guilty should not have been accepted because the statement he made to Sergeant Welch was an "exculpatory no" that is not within the scope of Article 107, Uniform Code of Military Justice, 10 U.S.C. § 907. *See United States v. Collier*, 23 U.S.C.M.A. 173, 175, 48 C.M.R. 789, 791 (1974). Consequently, I perceive no need to determine whether, in the circumstances, Sergeant Welch was obligated, under Article 31(b), UCMJ, 10 U.S.C. § 831(b), to preface his question to the accused by advice as to the right to remain silent. *Cf. United States v. Nowling*, 9 U.S.C.M.A. 100, 25 C.M.R. 362 (1958). However, I agree that the accused's use of a false name was not merely an "exculpatory no," but a statement that had "intrinsic capability" [*see United States v. Goldfine*, 538 F.2d 815, 828 (9th Cir. 1976)] to hamper Sergeant Welch in the performance of his duty to apprehend the accused as an escapee. *United States v. Collier, supra*. I, therefore, join Chief Judge Everett in the determination that the acceptance of accused's plea to specification 1 of the Charge was correct and in affirmance of the decision of the United States Navy Court of Military Review.

FLETCHER, Judge (dissenting):

I dissent from the majority's affirmance of the findings regarding specification 2, Charge V–the offense of making a false official statement, in violation of Article 107, Uniform Code of Military Justice, 10 U.S.C. Sec. 907.

The plea inquiry in the record of trial establishes the following facts. On August 18, 1977, the appellant was in a jeep outside the Legal Center at Pearl Harbor Naval Base, Hawaii. He had just been to a magistrate's hearing and Corporal Whitrock, his chaser, was returning him to the Correctional Center. The appellant jumped from the jeep and escaped from *this Marine corporal's* custody.

On August 23, 1977, the appellant went to 1164 Bishop Street in Honolulu, Hawaii, to pick up a telegram at the ITT Telegram Office. He was still on unauthorized absence. There, he recognized Staff Sergeant R. A. Welch from the Correctional Center who was then dressed in civilian clothes. Sergeant Welch asked the appellant his name and he responded "Ricky Johnson."

The appellant admitted that he did this for the purpose of deceiving Sergeant Welch and effecting his escape. He acknowledged that Sergeant Welch was acting in an official military capacity in questioning and apprehending him; that Sergeant Welch worked at the Correctional Center at Pearl Harbor; and that Sergeant Welch questioned him in order to make sure he was the right person to be brought back to the Correctional Center.

The particular question to be answered in this case is whether the appellant's response to Sergeant Welch was an official statement within the meaning of Article 107. In deciding this question on the basis of the record before us, it is important to remember that the purpose of this criminal statute is:

"to protect the authorized functions of governmental departments and agencies

from the perversion which might result from the deceptive practices described." *United States v. Hutchins,* 5 U.S.C.M.A. 422, 427, 18 C.M.R. 46, 51 (1955) (quoting from *United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941)).

In this light, this Court has held that for prosecution of this offense to be consistent with the lawful purpose of the statute, the person who seeks the statement must be shown to be discharging the functions of a particular office. *See United States v. Cummings,* 3 M.J. 246 (C.M.A.1977); *United States v. Arthur,* 8 U.S.C.M.A. 210, 24 C.M.R. 20 (1957). Moreover, the service member from whom the statement is sought must have an independent obligation to speak the truth as part of a particular official duty. *See United States v. Osborne,* 9 U.S.C.M.A. 455, 26 C.M.R. 235 (1958); *United States v. Aronson,* 8 U.S.C. M.A. 525, 25 C.M.R. 29 (1957). *Cf. United States v. Collier,* 23 U.S.C.M.A. 173, 48 C.M.R. 789 (1974). In addition, where the person who seeks the statement is a law enforcement agent and the person questioned is a suspect, there must be a showing that the latter was informed of his rights under Article 31, UCMJ, 10 U.S.C. Sec. 831. *See United States v. Collier, supra; United States v. Geib,* 9 U.S.C.M.A. 392, 26 C.M.R. 172 (1958).

The majority opinion concludes from the appellant's answers to the plea inquiry that Sergeant Welch was acting in the execution of his duties with the Correctional Center in questioning the appellant.[1] I disagree, and construe the appellant's answers to mean that Sergeant Welch was acting as an arresting officer under Article 7, UCMJ, 10

---

1. The Government in its Additional Citations of Legal Authority, asserts that Sergeant Welch, as a member of the staff of the correctional facility, had a duty to apprehend escaped prisoners (*see* the Department of the Navy Corrections Manual, SECNAVINST 1640.9, sec. 208.4 (19 June 1972)), and authority to perform this duty as needed. *See* U.S. Navy Regulations, sec. 0829 (1973). I do not read these regulations as broadly as the Government, nor do I find them applicable in the present case. In a similar vein, SECNAVINST 1640.9, sec. 304.7 states:

*Loss of Prisoner in Transit*

\* \* \* \* \* \*

b. *Escape.* If a prisoner escapes while being transferred, the officer or escort in charge should exhaust resources immediately available to him in apprehending the prisoner, *then take immediate action to contact the nearest law enforcement agency.* Under no circumstances should supervision of other prisoners be relaxed in order to pursue an escaping prisoner. (Emphasis supplied.)

U.S.C. Sec. 807, when he questioned the appellant. In any event, there is a patent ambiguity in the record with respect to the particular duties of Sergeant Welch in this incident. Moreover, such confusion on the record suggests a possible defense to the offense charged. The military judge has the responsibility to clear this record of such doubt by asking further questions of the appellant to support his guilty belief. *United States v. Jemmings,* 1 M.J. 414, 418 (C.M.A.1976). Without a clear record on this issue, I cannot accept the majority's view that Sergeant Welch was performing Correctional Center duties when he questioned the appellant. *United States v. Care,* 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969).

The Government originally admitted that the record of trial did not show the reason Sergeant Welch was at the telegraph office in his civilian clothes, nor in what official capacity he approached the appellant and asked his name. Nevertheless, it argued that, since the appellant was a subordinate enlisted member, he had the independent duty under U.S. Navy Regulations sec. 1104 (1973)[2] to respond readily and truthfully to inquiries from his known superior. The implication of this argument is that Sergeant Welch, by virtue of his status as a superior noncommissioned officer in the Naval Service, had authority or official capacity under this regulation to question the appellant, his subordinate. Our decision in *United States v. Arthur, supra,* treated questioning under similar circumstances. There it was held that since the questioning commissioned officer was acting by virtue of his status alone, and not discharging a particular duty, nothing this accused said could possibly pervert the performance of a government operation. Accordingly, consistent with the purpose of the statute, statements made in response to this type of questioning were found not to be official within the meaning of Article 107. *See United States v. Cummings, supra.*

In any event, I believe the plea inquiry does reflect the fact that Sergeant Welch was acting in some official military capacity in apprehending the appellant. He was performing a law enforcement function which may in the unusual instance be carried out by any person authorized under regulations governing the armed forces. *See* Article 7(b). However, by statute, Sergeant Welch was required to have a reasonable belief that an offense had been committed and the person to be apprehended committed it. *See* Article 7(b). Under these circumstances, the appellant must be considered a suspect.

However, as indicated earlier, every intentional false statement to a law enforcement agent does not necessarily fall within the scope of Article 107. *See United States v. Osborne, supra; United States v. Aronson, supra.* If the statement is made by a suspect in response to official interrogation, there must be a showing that the suspect was advised of his rights under Article 31. *United States v. Geib, supra.* There is no such showing in this record of trial. The Government argues, however, that since the inquiry was "innocuous" and not incriminating, no such rights' advice was required by Article 31. I must disagree. Article 31(b) is not so restricted:

> (b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court–martial.

Since the record of trial fails to reflect the giving of this rights' advice to the appellant prior to Sergeant Welch's request for a statement as to his identity, a finding of guilty under Article 107 cannot be lawfully sustained for his false response.

---

**2.** U.S. Navy Regulations, sec. 1104 (1973), entitled Compliance with Lawful Orders:

> All persons in the naval service are required to obey readily and strictly and to execute promptly, the lawful orders of their superiors.

Even if the majority's positions as to the preceding two requirements for a successful prosecution under Article 107 are correct, the Government must still show the appellant had a particular duty to respond truthfully. The majority observes that each service member has a duty to account for his presence in order to maintain the strength of the armed forces. The Government contends that the appellant, as a subordinate to Sergeant Welch, had a duty under Naval Regulations to respond truthfully to the questions of his superior. These obligations are general in nature and contingent upon one's status as a member of the service. *See United States v. Arthur, supra.* They are not related to a particular duty or responsibility of the appellant (*see United States v. Aronson, supra*), nor one affirmatively incurred by his voluntary action. *See United States v. Collier, supra.* Accordingly, I believe that Article 107 is not the proper vehicle for punishing violations of these more general obligations. *E. g.,* Articles 85, 86, and 92, UCMJ, 10 U.S.C. Secs. 885, 886, and 892, respectively. Moreover, in line with my view of this case, a false statement of this nature by a suspect to a law enforcement agent does not "pervert" the government's criminal investigative function, but rather "only lead[s] to further investigation to discover the facts–and that

is the very purpose of the agency." *See United States v. Aronson, supra* at 530, 25 C.M.R. at 34.

I am also disturbed by the majority's unjustified reluctance to follow persuasive federal case law on this issue. In *United States v. Bedore,* 455 F.2d 1109 (9th Cir. 1972), the government agent was attempting to serve a subpoena on Bedore to appear at the trial of a person named Cook. Accordingly, it is not accurate to say, as does the majority, that Bedore was under no legal obligation to correctly identify himself. *See* Fed.R.Crim.P. 17(g). Moreover, his concealment of his identity by giving a false name interferred with the important governmental function of administering justice in the courts. Yet, there the Court of Appeals for the Ninth Circuit refused to expansively apply this much broader criminal statute to that situation. *See also United States v. Thevis,* 469 F.Supp. 490, 513, 514 (D.Conn.1979). Likewise, I do not believe that Article 107 should be construed in a literal manner to "bring about absurd consequences, or flagrant injustices, or produce results not intended by Congress." *See United States v. Osborne, supra* at 457, 26 C.M.R. at 237 (quoting from *United States v. Levin,* 133 F.Supp. 88, 90 (D.Colo.) (1953)).