**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Alfredo EQUIHUA–JUAREZ, aka Jorge Perez–Magana, Martin Ramirez–Estrada, Defendant–Appellant.**

**No. 87–5205.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1988.

Decided July 15, 1988.

Verna J. Wefald, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Laura J. Birkmeyer, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before PREGERSON and THOMPSON, Circuit Judges, and MUECKE,* District Judge.

PREGERSON, Circuit Judge:

Alfredo Equihua–Juarez appeals his conviction, following a jury trial, for making a false material statement to a United States Border Patrol agent in violation of 18 U.S.

---

C. § 1001.[1] Equihua–Juarez made the false statement when he gave a false name, i.e., "Martin Ramirez–Estrada," in response to a question asked by Border Patrol Agent Spruance during a postarrest interview. Equihua–Juarez contends that his false statement falls within the "exculpatory no" exception to section 1001. Specifically, Equihua–Juarez argues that stating his true name would have potentially incriminated him because Border Patrol Agency files on "Alfredo Equihua–Juarez" would have revealed prior convictions for illegal entry.

Because proof of such a prior conviction is an element of felony illegal entry, had Equihua–Juarez given his true name, he would have furnished a link in the chain of evidence leading to his prosecution and conviction for felony illegal entry. We reverse the § 1001 conviction.

## FACTS AND PROCEEDINGS

On January 28, 1987, Equihua–Juarez was arrested by United States Border Patrol Agents Spruance and Steiner for having entered the United States illegally. Equihua–Juarez was taken to a Border Patrol station for processing. Before Equihua–Juarez was questioned, he was advised of his *Miranda* rights. After Equihua–Juarez stated that he understood his rights, Agent Spruance asked him for certain biographical information including his name, his place and date of birth and his parents' names. Equihua–Juarez falsely stated that his name was "Martin Ramirez–Estrada." Agent Spruance entered this biographical information on a "Record of Deportable Alien," a form that the Immigration and Naturalization Service (INS) requires Border Patrol agents to prepare for every suspected illegal alien held in detention.[2] A further records' check based on fingerprint analysis revealed that Equihua–Juarez had previously been convicted of illegal entry

---

\* The Honorable Carl A. Muecke, Senior United States District Judge for the District of Arizona, sitting by designation.

1. Equihua–Juarez was also convicted of felony illegal entry in violation of 8 U.S.C. § 1325. He does not appeal that conviction.

2. The information on this form is used to identify the apprehended alien and determine whether the alien should be returned to the country of origin, deported, or prosecuted for a felony or for a misdemeanor.

under the name of "Alfredo Soto–Torres." Immigration files listed the name of "Alfredo Equihua–Juarez" as one of the aliases for this same individual.[3]

On February 13, 1987, Equihua–Juarez was indicted. The indictment charged violations of 8 U.S.C. § 1325 (felony illegal entry) and 18 U.S.C. § 1001 (false material statement).[4] On May 11, 1987, Equihua–Juarez filed a motion to dismiss the § 1001 charge. He asserted that his statement of a false name to Agent Spruance fell within the "exculpatory no" exception to section 1001. The district court denied the motion.

A jury trial began on May 12, 1987. At the close of the government's case and again after the defense rested, Equihua–Juarez made motions for acquittal on the § 1001 charge based on the "exculpatory no" exception. The court denied both motions. On May 13, 1987, the jury returned guilty verdicts. Judgment of conviction was entered and Equihua–Juarez was sentenced to two years' imprisonment for violating § 1325 and one year's imprisonment for violating § 1001, the sentences to be served consecutively.

## DISCUSSION

[1] The application of the "exculpatory no" exception to liability under 18 U.S.C. § 1001 is a legal question reviewed *de novo*. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Section 1001 prohibits knowingly and willfully making a false statement that is material to any matter within the jurisdiction of a federal government department or agency. 18 U.S.C. § 1001. Section 1001,

however, was not intended to apply to all false statements made to government agencies. *See United States v. Medina de Perez*, 799 F.2d 540, 543–44 (9th Cir.1986); *United States v. Bedore*, 455 F.2d 1109, 1111 (9th Cir.1972). The "exculpatory no" doctrine provides an exception to § 1001. If certain requirements are met, a person may not be prosecuted under § 1001 for making a false exculpatory response to government investigators. *See United States v. Olsowy*, 836 F.2d 439, 441 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988), *Medina de Perez*, 799 F.2d at 544–46. *See also United States v. Gonzalez–Mares*, 752 F.2d 1485, 1492 (9th Cir.), *cert. denied*, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985); *United States v. Rose*, 570 F.2d 1358, 1364 (9th Cir.1978); *Bedore*, 455 F.2d at 1111. In *Medina de Perez*, combining elements drawn from *Bedore* and *Rose*, we discussed five factors that should be satisfied to apply the "exculpatory no" doctrine:

(1) the false statement must be unrelated to a claim to a privilege or a claim against the government;

(2) the declarant must be responding to inquiries initiated by a federal agency or department;

(3) the false statement must not impair the basic functions entrusted by law to the agency;

(4) the government's inquiries must not constitute a routine exercise of administrative responsibility; and

(5) a truthful answer would have incriminated the declarant.

*Medina de Perez*, 799 F.2d at 544 and n. 5.[5]

Equihua–Juarez falsely stated his name in response to a question asked by Border

---

**3.** During later questioning by Agent Spruance, Equihua–Juarez admitted that he had entered the country illegally on January 28, 1987.

**4.** The indictment was returned in the name of "Alfredo Soto–Torres." During trial, the parties stipulated that the defendant's true name is "Alfredo Equihua–Juarez."

**5.** Both parties cite a statement from *United States v. Olsowy* wherein we interpreted *Medina de Perez* as additionally requiring that the suspect be *in custody* when he or she made the

charged false statement: "The [exculpatory no] exception allows a suspect who is *in custody* to deny involvement in the crime for which he was arrested without incurring additional penalties." *United States v. Olsowy*, 819 F.2d 930, 932 (9th Cir.1987) (emphasis added). On January 4, 1988, *Olsowy* was amended; we deleted language that required the suspect to be in custody for the exception to apply. The pertinent sentence now reads: "The exception allows a suspect to deny involvement in a crime without incurring additional penalties." *Olsowy*, 836 F.2d at 441. Nevertheless, here, it is undisputed

Patrol Agent Spruance. This false statement clearly meets the first two requirements of the "exculpatory no" exception. First, Equihua–Juarez did not give a false name to gain the privilege of entry into the United States. He was already present in the United States when questioned by Agent Spruance and admitted that he had entered the country illegally. Second, Equihua–Juarez gave his false statement in response to an inquiry initiated by Agent Spruance. The dispute in this appeal focuses on the final three factors of the "exculpatory no" doctrine.

### A. False Statement Does Not Impair Agency's Basic Function

█ Initially, Equihua–Juarez contends that by giving a false name to Agent Spruance, he did not impair the basic functions entrusted by law to the Border Patrol Agency because trained Border Patrol agents anticipate that apprehended aliens will give false names and thus rely on other means to check on an arrestee's identity.

In *Medina de Perez*, we concluded that "[i]n a post-arrest criminal investigative setting, a competent government investigator will anticipate that the defendant will make exculpatory statements." We further noted that "[a] defendant who meets this expectation cannot possibly pervert the investigator's police function" because "a thorough agent would continue vigorous investigation of all leads until satisfied that he has obtained the truth." 799 F.2d at 546.

Here, Agent Spruance admitted at Equihua–Juarez's trial that he does not automatically believe the names given by apprehended aliens because they frequently give false names, and the Border Patrol relies on numerous other means to identify apprehended aliens including files indexed by family name and files of photographs and fingerprints. Equihua–Juarez could not have impaired the function of the Border Patrol because determining the correct identity of aliens is one of the agency's primary responsibilities, and Border Patrol agents are aware that apprehended aliens often give aliases. Equihua–Juarez's false statement of identity did not pervert the agency's function. *See Medina de Perez*, 799 F.2d at 546.[6]

### B. Inquiries Not Routine Exercise of Administrative Responsibility

█ Equihua–Juarez next contends that when Border Patrol Agent Spruance asked his name and other biographical questions during a post-arrest interview, the agent was not discharging a routine administrative responsibility but was acting as a police investigator conducting an interrogation. The government contends that Agent Spruance's solicitation of Equihua–Juarez's name was for INS administrative record-keeping purposes, and that the district court correctly found that Agent Spruance's biographical questions did not constitute interrogation.[7]

█ In *Medina de Perez*, this court held that the "exculpatory no" exception applies when the inquiring government agent acts as a police investigator and not when the agent's questions constitute a routine exercise of administrative responsibility. *Medina de Perez*, 799 F.2d at 544–45. The court noted that:

> the jurisdiction of a federal agency, and that materiality is determined by considering the intrinsic capabilities of the false statement, and not the agency's actual reliance on the erroneous information. *Facchini*, 832 F.2d at 1162; *Rodriguez–Rodriguez*, 840 F.2d at 700. Both cases are irrelevant to the issues in this case as neither involves the "exculpatory no" doctrine or the "impairment of function" requirement.

that Equihua–Juarez was in custody when he made the false statement charged as a violation of § 1001.

6. In support of its contention that Equihua–Juarez's false name statement impaired the basic functions entrusted by law to the Border Patrol agency, even though the agents were able to use other means to ascertain Equihua–Juarez's true identity, the government relies on two cases: *United States v. Facchini*, 832 F.2d 1159 (9th Cir.1987) and *United States v. Rodriguez–Rodriguez*, 840 F.2d 697 (9th Cir.1988). Both cases hold that to convict a defendant under § 1001, the government must prove that the charged false statement is material to a matter within

7. The district court's determination of whether questioning constitutes interrogation is subject to review for clear error. *United States v. Poole*, 806 F.2d 853 (9th Cir.1986).

Although the line between "administration" and "investigation" cannot be sharply drawn, the argument has been made that this statute was intended to apply only to federal government "administration" and not intended to compel citizens to answer truthfully every question put to them in the course of a federal police or federal criminal investigation. *Medina de Perez,* 799 F.2d at 545 (quoting *United States v. Bush,* 503 F.2d 813, 815 (5th Cir.1974)). In *Medina de Perez,* the defendant made false statements regarding her possession of a camper truck that had been searched at the border and found to contain marijuana. The defendant made the statements, charged as violations of § 1001, to a United States Customs agent and a Drug Enforcement Administration (DEA) agent when they questioned her after she had been arrested and advised of her *Miranda* rights. The court held that "during the post-arrest interrogation, [the DEA agent] was acting as a police investigator and not as a program administrator, and therefore his inquiries could not constitute a 'routine exercise of administrative responsibility.'" *Medina de Perez,* 799 F.2d at 545–46.[8]

In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Court defined interrogation as "any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the subject." 446 U.S. at 301, 100 S.Ct., at 1689. The Court further noted that in determining whether questioning is interrogation, courts should "focus primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis,* 446 U.S. at 301, 100 S.Ct., at 1690. *See also United States v. Booth,* 669 F.2d 1231, 1237–38 (9th Cir.1981). We have held that seemingly neutral questions constitute interrogation when they are reasonably likely to elicit incriminating information relevant to establishing elements necessary for conviction of the charged offense. *See United States v. Mata–Abundiz,* 717 F.2d 1277, 1280 (9th Cir.1983); *United States v. Disla,* 805 F.2d 1340, 1347 (9th Cir.1986).

Here, after Equihua–Juarez was arrested for illegal entry, taken into custody and advised of his *Miranda* rights, Agent Spruance asked him questions to elicit certain biographical information including his name, his place and date of birth and his parents' names to complete a "Record of Deportable Alien." This record is prepared for every suspected alien held in detention. The INS uses this form to identify the alien and determine if the alien has a prior record. The form is also used to determine whether the alien should be returned to the country of origin, deported, or criminally prosecuted, and if prosecuted, whether for a misdemeanor or a felony. Thus, Agent Spruance's questions were directed at eliciting information which could be used in a criminal investigation and potential prosecution of Equihua–Juarez on charges of felony illegal entry.[9] Specifically, Agent Spruance was attempting to ascertain Equihua–Juarez's identity to determine if he had a prior record of illegal entry. Proof of such a prior illegal entry conviction is an element of felony illegal entry,

---

8. The "exculpatory no" exception, however, is not limited to situations where an individual is being formally interrogated. *See, United States v. Bedore,* 455 F.2d at 1109 (defendant who was not in custody gave a false name to an FBI agent who sought to serve him at his home with a subpoena; the false name statement qualified for the "exculpatory no" exception to § 1001).

9. The government emphasizes that maintaining a record on aliens held in INS custody is "a necessary and obvious administrative function" performed by a Border Patrol agent who is entrusted by statute with the administration and enforcement of the immigration laws. However, regulations describing the organization of the Immigration and Naturalization Service note that the Border Patrol Division is one of five units under the Office of Enforcement, 8 C.F.R. § 100.2(10)(i). The Border Patrol sectors and their chief patrol agents "are responsible for the *enforcement* of the Act and all other laws relating to immigration and naturalization within their assigned geographic areas...." 8 C.F.R. § 100.2(f) (emphasis added). The regulations neither mention any administrative functions that the Border Patrol units are to perform nor list Border Patrol units with divisions whose duties include administrative functions. This evidence, coupled with the fact that Spruance administered *Miranda* warnings to Equihua, strongly suggests that Border Patrol Agent Spruance's questioning of Equihua–Juarez was not administrative.

the crime for which Equihua–Juarez was prosecuted and convicted. *See* 8 U.S.C. § 1325; *U.S. v. Arambula–Alvarado,* 677 F.2d 51, 52 (9th Cir.1982). Thus, under the circumstances, the questioning regarding Equihua–Juarez's identity was reasonably likely to elicit incriminating information relevant to establishing an element necessary for conviction of felony illegal entry. Such questioning thus constituted interrogation. *See Innis,* 446 U.S. at 301, 100 S.Ct. at 1689; *Mata–Abundiz,* 717 F.2d at 1280.

### C. Potentially Incriminating Response

█ Equihua–Juarez finally contends that had he stated his true name to Agent Spruance, he would have potentially incriminated himself because his true name would have facilitated the discovery of his prior convictions for illegal entry.

The "exculpatory no" exception applies when giving a truthful answer would have incriminated the declarant. *Medina de Perez,* 799 F.2d at 544.[10] An incriminating response is any disclosure that the declarant reasonably believes could be used by the government in a criminal prosecution or could lead to other evidence that might be so used. *Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656–57, 32 L.Ed.2d 212, *reh'g. denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972). Moreover, the privilege against self-incrimination does not merely encompass evidence that may lead to criminal conviction, but includes information which would furnish "a link in the chain of evidence" that could lead to prosecution. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

Here, Equihua–Juarez asserts that if he had given his true name to Agent Spruance, the Border Patrol, through a search of their files on "Alfredo Equihua–Juarez," would have discovered his prior illegal entry convictions. Proof of a prior conviction for illegal entry is one element necessary for a felony illegal entry conviction. 8 U.S.C. § 1325;[11] *see United States v. Arambula–Alvarado,* 677 F.2d at 52. Equihua–Juarez could have reasonably believed that giving his true name to Agent Spruance would have led to the discovery of his prior convictions, proof that could be used against him in a prosecution for felony illegal entry. *See Kastigar* 406 U.S. at 444–45, 92 S.Ct., at 1656. Thus, by giving a truthful answer, Equihua–Juarez would have furnished a link in the chain of evidence that could have led to his prosecution and conviction for felony illegal entry. *See Hoffman,* 341 U.S. at 486, 71 S.Ct., at 818.

In short, Equihua–Juarez meets all five requirements of the "exculpatory no" exception to § 1001. *See Medina de Perez,* 799 F.2d at 544–45.

The § 1001 conviction is REVERSED.

---

**10.** The defendant, in such circumstances, is faced with the difficult choice of giving an incriminating truthful answer or a false response which could lead to prosecution under § 1001. "[The] exculpatory no exception is due in part to 'latent distaste for an application of [section 1001] that is uncomfortably close to the Fifth Amendment'" *Medina de Perez,* 799 F.2d at 547 (quoting *United States v. Lambert,* 501 F.2d 943, 946 n. 4 (5th Cir.1974) (en banc)).

**11.** 8 U.S.C. Section 1325 reads, in pertinent part:
Any alien who (1) enters the United States at any time or place other than as designated by immigration officers ... shall, for the first commission of any such offenses, be guilty of a misdemeanor ..., and for a subsequent commission of any such offenses shall be guilty of a felony....