# -UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.C. RUGH**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## JOSEPH R. FRANKLIN
### SERGEANT (E-5), U.S. MARINE CORPS

## NMCCA 201500130
## GENERAL COURT-MARTIAL

**Sentence Adjudged:** 4 December 2014.
**Military Judge:** Col D.J. Daughtery, USMC.
**Convening Authority:** Commanding General, 3D Marine Division, Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** LtCol K.T. Carlisle, USMC.
**For Appellant:** CDR Ricardo Berry, JAGC, USN.
**For Appellee:** LCDR Justin Henderson, JAGC, USN; LT James Belforti, JAGC, USN.


**6 October 2015**

```
---------------------------------------------------------
                  OPINION OF THE COURT
---------------------------------------------------------
```

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, found the appellant guilty, pursuant to his pleas, of one specification of assault with a weapon likely to produce grievous bodily harm, in violation of Articles 128, Uniform Code of Military Justice, 10 U.S.C. §§ 928, and adjudged a sentence of 60 days' confinement, reduction to pay grade E-3, and a bad-

conduct discharge.  The convening authority approved the sentence as adjudged.[1]

On appeal, the appellant alleges his guilty plea was not provident.  The appellant argues the military judge failed to elicit facts to establish the appellant used a weapon, a camp chair, in a manner likely to produce death or grievous bodily harm.  We disagree.

**Background**

On 16 May 2014 in celebration of the 12th Marines Regimental Highlands Games on Camp Hansen, Okinawa, Japan, the appellant and Corporal (Cpl) JB engaged in a long day of friendly drinking.  Shortly after midnight, Cpl JB drunkenly spilled his beer on the appellant.  In response the appellant picked up a camp chair and threw it at Cpl JB.

> [T]here was a cooler and some chairs set up, sir.  I walked over there and I grabbed the chair and I turned and I threw it at him, sir.[2]

After the appellant hit him with the chair, Cpl JB covered his face with his hands, stumbled several steps and first sat and then lay on the ground.

As a result of the strike, Cpl JB's left eye was severely damaged.  His sclera, the white part of the eye, ruptured from the nine o'clock to the twelve o'clock position and all the way back to the muscle joining the eye to the socket.  One-third of his iris and lens were destroyed.  The retina detached and part of the retina came out of the eye through the opening wound.  Cpl JB was taken by ambulance to U.S. Naval Hospital Okinawa by which time his eye had completely filled with blood.

As described by an Army Medical Corps ophthalmologist and an expert in retinal ophthalmology, this was a blunt trauma injury, "like a water balloon is being squished to the point that it ruptures."[3]

---

[1] Pursuant to a pretrial agreement, automatic forfeitures were deferred and waived for the benefit of the appellant's family.

[2] Record at 30.

[3] *Id*. at 81.

Cpl JB was medically evacuated to Tripler Army Medical Center, Honolulu, Hawaii, where he underwent a series of delicate surgeries in an attempt to save his eye. One such surgery, a seven-hour ordeal, was one of the longest procedures the surgeon had ever performed. At the time of surgery, there was a 72% chance of blindness in that eye.[4]

For a year after the assault, there remained the possibility of blindness in both eyes, the result of a condition called sympathetic ophthalmia in which the body's immune system attacks the retinas of both eyes after surgery. Regardless, Cpl JB's left eye will never be correctable to better than 20/80 vision. The fat around the injured eye atrophied and will never regenerate. As a result, his left eye will always have a sunken appearance.

## Standard of Review

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Inabinette,* 66 M.J. 320, 322 (C.A.A.F. 2008). A military judge abuses this discretion when accepting a plea if he does not ensure the accused provides an adequate factual basis to support the plea during the providence inquiry. *See United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

In establishing a factual basis, the military judge must explain each element of the offense charged and question "the accused about what he did or did not do, and what he intended . . . ." *United States v. Davenport*, 9 M.J. 364, 366 (C.M.A. 1980). We will not reject the plea unless there is a substantial basis in law or fact for questioning the guilty plea. *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Passut*, 73 M.J. 27, 29 (C.A.A.F. 2014)).

## The Providence Inquiry

At the beginning of the providence inquiry, the military judge explained to the appellant the elements of the offense:

> [First,] [t]hat on or about 17 May 2014, while on active duty at Camp Hansen, Okinawa, Japan, you did bodily harm to [Cpl JB];

---

[4] *Id*. at 82.

Second, that you did so with a certain weapon to wit: a chair and by striking him in the face with a chair;

Third, that the bodily harm was done with unlawful force or violence;

And, fourth, that the weapon was used in a manner likely to produce death or grievous bodily harm.[5]

The military judge further explained, "[a] weapon is dangerous when used in such a manner that it is likely to produce death or grievous bodily harm. . . . A weapon or means or force is likely to produce death or grievous bodily harm when the natural and probable results of its particular use would be death or grievous bodily harm, although this may not be the use to which the object is ordinarily put."[6]

Additionally, the military judge defined grievous bodily harm as, "serious bodily injury. Grievous bodily harm does not mean minor injuries such as a black eye or a bloody nose, but it does mean f[r]acture or dislocated bones, deep cuts, torn members of the body, serious damaged internal organs, or other serious bodily injuries."[7]

During the *Care* inquiry the appellant admitted to picking up the chair and throwing it at Cpl JB, "I did grab the chair and I did throw it at [Cpl JB], sir."[8] He reiterated, "... I grabbed the chair and I turned and I threw it at him, sir."[9] These admissions were reinforced by statements he made to Sergeant FG in which he acknowledged that he knocked Cpl JB over;[10] the stipulation of fact in which he agreed, "I believe I threw the chair in a manner likely to cause grievous bodily harm;"[11] and his statement made to a Naval Criminal Investigative Service agent.[12]

---

[5] *Id*. at 27-28.

[6] *Id*. at 28.

[7] *Id*.

[8] *Id*. at 29.

[9] *Id*. at 30.

[10] *Id*. at 64.

[11] Prosecution Exhibit 1 at 2.

[12] Prosecution Exhibit 2 at 2.

Subsequently, the military judge asked the appellant on two separate occasions whether throwing the chair at Cpl JB amounted to using a weapon "in a manner likely to produce death or grievous bodily harm?" The appellant responded, "yes, sir," both times.[13]

When ask about the nature of the grievous bodily harm Cpl JB suffered, the appellant offered, "[t]he damage that he suffered on his eye, sir, cost him to have multiple surger[ies]."[14] Shortly thereafter, the following colloquy ensued:

MJ: And have you seen all of the medical reports or have you discussed the medical reports and the injuries with your counsel?

ACC: I review them with my counsel and expert, sir.

MJ: Okay. And that was the expert ophthalmologist that the Court appointed to the defense team. Is that correct?

ACC: Yes, sir.

. . . .

MJ: Thank you. And, sergeant, based on everything that you have reviewed with your counsel, the medical records, and reviewing with the ophthalmologist, do you believe that the injuries suffered constitute grievous bodily harm as I've defined them for you?

ACC: Yes, sir, I do.

MJ: Did you intentionally do this; that is, you intentionally picked up the chair and threw it at him?

ACC: Yes, sir.[15]

---

[13] Record at 31–33.

[14] *Id*. at 31.

[15] *Id*. at 31, 32.

5

Finally, the military judge asked the appellant if he understood the elements of the offense and if, taken together with the stipulation of fact, they correctly described what he did. The appellant answered both questions in the affirmative.[16]

## Analysis

The appellant asserts that the military judge failed to elicit facts sufficient to establish that grievous bodily harm was *likely* to result from the appellant's act. In determining whether grievous bodily harm is likely, "the ultimate standard . . . remains whether-in plain English-the charged conduct was 'likely' to bring about grievous bodily harm. . . . [T]he question is: was grievous bodily harm the likely consequence of [a]ppellant's . . . activity?" *United States v. Gutierrez*, 74 M.J. 61, 66 (C.A.A.F. 2015). Put in other words, "one conception is whether grievous bodily harm is the 'natural and probable consequence' of an act." *Id*. (citing *United States v. Weatherspoon*, 49 M.J. 209, 211 (C.A.A.F. 1998) (quoting Manual for Courts-Martial, United States (2012 ed.), Part IV, ¶ 54c(4)(a)(ii) ).

Factors helpful in determining whether grievous bodily harm was the likely consequence of an act include the circumstances surrounding the act and resulting harm, the degree of force used, the foreseeability of the harm, whether grievous bodily harm actually occurred, and the nature of the weapon. However, the nature of the weapon is not conclusive. "The crucial question is whether [the weapon's] use, under the circumstances of the case, is likely to result in. . . grievous bodily harm." *United States v. Vigil*, 13 C.M.R. 30, 32-33 (C.M.A. 1953). After evaluating the evidence adduced during the *Care* inquiry in this case, we answer that question in the affirmative.

After correctly defining "likely,"[17] the military judge elicited from the appellant that he intentionally threw the chair at Cpl JB; that Cpl JB was then facing the appellant when he threw the chair; that Cpl JB was extremely intoxicated at the time; that the chair did, in fact, hit Cpl JB in the face; and that grievous bodily harm resulted from Cpl JB being struck in the face with the chair. The appellant's statements were corroborated by his pretrial admissions and the stipulation of fact.

---

[16] *Id*. at 35.

[17] *Id*. at 28.

The military judge sufficiently established that serious harm to Cpl JB's eye was a natural and probable consequence of throwing the chair at Cpl JB.[18]  As a result, we find no substantial basis in law or fact for questioning the appellant's plea.

## Conclusion

The findings and the sentence are affirmed.


For the Court



R.H. TROIDL
Clerk of Court

---

[18] As the appellant points out, the eye is an extremely delicate organ, easily damaged.  Appellant's Brief of 16 Jul 2015 at 11. This makes serious injury to the eye even more likely and a natural and probable consequence of an act like throwing a chair at someone who is facing you.  As the old saw goes, "be careful or you'll put your eye out."