**UNITED STATES of America, Plaintiff,**

v.

**Timothy Allen MARUSICH, Defendant.**

Crim. No. 85–0327–B.

United States District Court,
S.D. California.

May 14, 1986.

Larry A. Burns, Asst. U.S. Atty., San Diego, Cal., for plaintiff.

Judy Clarke, Federal Defenders, Inc., San Diego, Cal., for defendant.

MEMORANDUM DECISION
AND ORDER

BREWSTER, District Judge.

BACKGROUND

The original one-count indictment in this case charged the defendant with a violation of 18 U.S.C. § 1716(h) (mailing an explosive device with intent to kill). The indictment alleged that on or about June 24, 1984, the defendant constructed a pipe bomb and caused it to be mailed to Susan Schwartz. Susan Schwartz was the defendant's supervisor when he was employed at National University in San Diego. The package that contained the bomb was addressed to Susan Schwartz's husband's office. When the parcel arrived, the recipient suspected that it contained explosives. The parcel was taken to the rear entrance of the building and was discarded in an alley. The parcel exploded upon impact and caused substantial property damage; however, no one was injured.

Postal inspectors conducted an investigation of this incident. This investigation led to the return of the original indictment by the grand jury.

The defendant was tried by a jury. Following extended deliberations, the jury was unable to return a unanimous verdict, and the court declared a mistrial.

The court scheduled a date for the retrial of this matter and a date for the hearing on any pretrial motions. Shortly before the pretrial motion date, the grand jury returned a superseding indictment.[1] The superseding indictment charged in count one the same allegations of mailing an explosive device with intent to kill as were

1. The court originally set the new trial date for February 25, 1985, and ordered that all pretrial

charged in the original indictment. The superseding indictment added a new count of making a false statement to federal officers in violation of 18 U.S.C. § 1001. The second count of the superseding indictment alleges that the defendant, during questioning by the postal inspectors, falsely stated that he had not vandalized an automobile owned by Susan Schwartz. The basis of this new count was the defendant's testimony at trial in which he admitted to having punctured the tires of Susan Schwartz's car.

At the hearing on the motions, the defendant argued that count two should not stand since the statement made to the postal inspectors was not false and because the inclusion of count two in the superseding indictment was the product of vindictive prosecution. The court ruled that these arguments were without merit.[2] Severance of the trials of counts one and two of the superseding indictment was also sought by the defendant on the ground that the joinder of the offenses at trial would be improper and prejudicial. This motion was denied.

In addition, the defendant argues that count two of the superseding indictment should be dismissed since the statements made by the defendant come within the "exculpatory no" exception to § 1001 as defined in *United States v. Bedore*, 455 F.2d 1109 (9th Cir.1972). For the reasons stated below, defendant's motion to dismiss is DENIED.

## DISCUSSION

18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The "exculpatory no" doctrine provides that a false statement is not subject to an indictment under 18 U.S.C. § 1001 if the

motions be heard on February 19, 1985. The superseding indictment was returned on February 14, 1985. In order to permit the defendant to attack the allegations in the superseding indictment, the court scheduled a new date for the hearing of pretrial motions and vacated the trial date. The hearing on the motions addressed here occurred on April 14, 1986. The trial date is presently set for May 27, 1986.

2. The court ruled the question of whether the defendant's statement to the postal inspectors was false is a question of fact which must be determined by the jury.

In making the claim that the inclusion of count two in the superseding indictment was the product of vindictive prosecution, the defendant relied on the fact that the U.S. Attorney sought the return of the indictment shortly after the mistrial had been declared, and the defendant had filed his pretrial motions. The defendant argued that the timing indicates that the superseding indictment was sought in retaliation for the defendant's exercise of his constitutional rights. Moreover, the defendant argued that the Government's actions in seeking the return of the superseding indictment are suspect since the prosecution was fully aware of the

facts which gave rise to this charge before the first trial and in fact had presented evidence of the defendant's involvement in the vandalism at trial pursuant to 404(b) of the Federal Rules of Evidence. The defendant also claimed that the Government's actions in this regard are questionable since the prosecutor failed to seek indictments for perjury against two of the witnesses at trial and has failed to have Susan Schwartz charged under 18 U.S.C. § 875(d) or 18 U.S.C. § 876 (extortion through use of the mails) based on her admission that she sent threatening letters to the defendant and another one of the employees at National University.

The Government responded that there was insufficient evidence to charge the defendant under 18 U.S.C. § 1001 until he had admitted under oath that he had vandalized Susan Schwartz's car and that since this admission occurred during trial, it was not possible for the Government to seek the return of an indictment until after the first trial had concluded.

The court ruled that the defendant had failed to make the initial showing of the appearance of vindictiveness, and that in the event such a showing had been made, the Government had demonstrated that the charges did not result from any vindictive motive.

false statement was a false denial of guilt by an individual subject to a criminal investigation and that false denial of guilt was made in response to an investigator's questioning. This exception was first recognized by the Fifth Circuit.

The leading Fifth Circuit case concerning the "exculpatory no" exception to § 1001 is *Paternostro v. United States*, 311 F.2d 298 (5th Cir.1962). The defendant in that case had made a false statement to a special agent of the Internal Revenue Service, was charged under § 1001 and convicted. The issue addressed by the court was whether mere negative answers to questions propounded by federal agents constitute "statements" within the meaning of § 1001. The court ruled that the district court erred in failing to dismiss the indictment because the defendant's statement did not come within the ambit of § 1001. *Id.* at 305. The Fifth Circuit reasoned that the statements did not come within § 1001 since at the time the defendant made the statement, he was not seeking to assert a claim against the Government nor was he seeking the grant of a privilege from the Government, and the defendant did not deliberately and aggressively initiate the making of an affirmative statement which was designed to pervert the legitimate functions of the Government. *Id.*

The Government filed a petition for rehearing. The petition was denied; however, the court took the opportunity to clarify its ruling and re-emphasize its position. The court stated:

It is our feeling that the "exculpatory no" answer without any affirmative, aggressive or overt misstatement on the part of the defendant does not come within the scope of the statute, 18 U.S.C.A. § 1001. Whether the Government agent to whom the answer is given be an agent of the F.B.I., a "policeman" or an Internal Revenue agent, is of little consequence. The same rule should apply to all "policemen" and therefore we cannot approve of one rule for one type of agent and another rule for an agent of another department of the same Government.

Under the facts and in the circumstances of this case, the Internal Revenue agent who initiated the interview was performing essentially the functions of a "policeman" or investigative agent of the Government. The statement attributed to defendant Paternostro is unquestionably an "exculpatory no".

*Id.* at 309.

The Ninth Circuit in *United States v. Bedore*, 455 F.2d 1109 (9th Cir.1972) took a different slant on the "exculpatory no" doctrine. The defendant in this case falsely denied his identity to F.B.I. agents who were seeking to serve a subpoena which directed the defendant to appear as a witness at a trial. The defendant was convicted under § 1001.

The Ninth Circuit overturned the conviction. The court held that Congress did not intend to proscribe false statements of this nature under § 1001. *Id.* at 1110. The court found that a literal reading of § 1001 would lead to the conclusion that *any* false statement made to a Government employee could be charged as a felony. *Id.* This construction was untenable to the court since it would be inconsistent with the legislative history of the statute and would effectively swallow up perjury statutes and other statutes which specifically proscribe the making of false statements to specific agencies of the Government. *Id.* After an examination of the legislative history, the Ninth Circuit concluded that Congress had enacted § 1001 in order to protect the authorized functions of governmental agencies which might be perverted by the making of false statements. *Id.* at 1111.

In conclusion, the court held:

The statute was not intended to embrace oral, unsworn statements, unrelated to any claim of the declarant to a privilege from the United States or to a claim against the United States, given in response to inquiries initiated by a federal agency or department, except, perhaps, where such a statement will substantially impair the basic functions entrusted by law to that agency. (*cf. Pa-*

*ternostro v. United States,* 311 F.2d 298 (5th Cir.1962)....

*Id.*

The court's ruling in *Bedore* was re-examined in *United States v. Rose,* 570 F.2d 1358 (9th Cir.1978). The defendant in *Rose* made false statements to customs agents concerning whether he had any items to declare. There were three counts in the indictment. Counts two and three of the indictment charged the defendant with violations of § 1001. The first count of the indictment charged the defendant with violations of 18 U.S.C. § 542, which prohibits the importation of merchandise into the United States by means of a false statement or practice without a reasonable belief that the statement or practice was truthful. The defendant was convicted on all counts.

On appeal, the defendant challenged his conviction on counts one and two because they were based on the same statement, and thus he should not be sentenced as to both. The court, relying on *Bedore,* dismissed the conviction on count two since the legislative history of § 1001 revealed no evidence of congressional intent to "pyramid punishment" for the offenses covered by another statute as well as § 1001. *Id.* at 1363.

The defendant also argued that his conviction on count three should be overturned since his statements to the customs agents did not constitute material falsehoods within the meaning of § 1001. In upholding the conviction, the Ninth Circuit concluded that *Bedore* was not controlling since the defendant was seeking the privilege of entry into the United States at the time he made the statement. *Id.* at 1364. Furthermore, the court ruled that the conviction under § 1001 was proper since the questions asked by the customs agents were a routine exercise of administrative responsibility, and a truthful answer by the defendant would not have involved self-incrimination. *Id.* at 1364.

The Ninth Circuit again discussed the scope of the *Bedore* exception to § 1001 in *United States v. Carrier,* 654 F.2d 559 (9th Cir.1981). The defendant in this case was asked by border patrol agents whether he was transporting more than $5,000.00 worth of currency over the international border. The defendant stated that he was not. A search of the defendant disclosed that he was in fact transporting currency illegally. The Government obtained a conviction on two counts for violations of § 1001.

The defendant argued that *Bedore* required that the convictions be overturned. The court disagreed and found that this case was controlled by *Rose* as opposed to *Bedore.* The court stated:

> *Bedore* is distinguished in *United States v. Rose* [citation omitted] where the court said that even though the statement is oral, unsworn, and unrelated to a claim against the United States, the *Bedore* doctrine is inapplicable because (1) the declarant was claiming a privilege of entry into the United States; (2) his statement potentially impaired the function of the Customs Services; (3) the border agent's questions were a "routine exercise of administrative responsibility"; and (4) a truthful answer would not have involved self-incrimination.

*Id.* at 561. The court concluded that the defendant's statements came within § 1001 since he was claiming the privilege of entry into the United States and that this alone was sufficient to take the case outside the *Bedore* doctrine. *Id.* The court also stated that "[b]eyond that, the inspector's question was routine and did not involve the possibility of self-incrimination". *Id.*

The most recent case concerning the *Bedore* doctrine is *United States v. Gonzalez-Mares,* 752 F.2d 1485 (9th Cir.1985). In this case, the defendant was arrested at the international border and was charged with illegal transportation of aliens and with aiding and abetting illegal entry. These violations were charged as petty offenses, and the defendant consented to trial before a magistrate.

The defendant was interviewed by probation to enable probation to prepare an oral presentence report to present to the magis-

trate. The probation officer informed the defendant that she was a good candidate for probation. The defendant was not advised of her *Miranda* rights prior to questioning; however, the probation officer did tell her that if she made any false statements, she could be prosecuted or suffer other consequences if she presently was on probation. When asked whether she had used any aliases in the past or whether she had a prior criminal record, she responded in the negative.

. . . .

The defendant pled guilty before the magistrate. At that time, the probation officer presented the oral presentence report and represented to the court that the defendant had no prior criminal record and that she was a good candidate for probation. The defendant was asked by the magistrate whether she had ever been in trouble. She responded that she had not. As a result, the defendant was placed on unsupervised probation.

The following day probation conducted a records check and discovered that the defendant had given false information concerning her prior record and prior use of different names.

The defendant was indicted for obstruction of justice and for making false statements to the probation officer. The defendant was tried and convicted on both counts.

Before the Ninth Circuit, the defendant argued that the district court erred in not dismissing the § 1001 count since the "exculpatory no" exception barred prosecution. The Ninth Circuit held that the district court's refusal to apply the "exculpatory no" doctrine was proper and upheld the conviction. *Id.* at 1492.

In reaching this conclusion, the court reasoned that the "exculpatory no" was not well received in the Ninth Circuit. *Id.* The Ninth Circuit characterized the "exculpatory no" exception as a judicial gloss on § 1001 and stated that the doctrine provided that "false denials of guilt, by an accused to an investigator, without more, do not ordinarily fall within the scope of the statute". *Id.* The decisions in *Rose* and *Carrier* were found to be controlling since the defendant here was seeking to assert a privilege against the government—in the form of probation. *Id.* Furthermore, the court found that the § 1001 conviction was justified since the false statements caused the probation department to make an erroneous recommendation, and a truthful answer would not have involved self-incrimination. *Id.*

Marusich contends that the rule set forth in *Rose* and *Carrier* is not applicable in this case since 1) at the time he was questioned by the postal inspectors, he was not claiming a privilege; 2) his false statement did not impair the functioning of the Postal Service; 3) the questioning by the postal inspectors did not involve the exercise of routine administrative responsibility; and 4) a truthful response to the question whether the defendant had vandalized Susan Schwartz's automobile would have implicated his Fifth Amendment right against self-incrimination.

The Postal Service is empowered under 39 U.S.C. § 404(a)(7) to investigate postal offenses. The offense with which the defendant is charged, mailing of an explosive device with intent to kill, is an offense over which the Postal Service has jurisdiction.[3] The defendant's false denial did impair the functioning of the Postal Service. Had the

**3.** 18 U.S.C. § 1716(h) provides in pertinent part: Whoever knowingly deposits for mailing or delivery, or knowingly causes to be delivered by mail, according to the direction thereon, or at any place to which it is directed to be delivered by the person to whom it is addressed, anything declared unmailable by this section, whether or not transmitted in accordance with the rules and regulations authorized to be prescribed by the Postal Service,

with the intent to kill or injure another, or injure the mails or other property, shall be fined not more than $10,000.00 or imprisoned not more than twenty years, or both.
18 U.S.C. § 1716(a) provides that "all explosives, inflammable materials, infernal machines, and mechanical, chemical, or other devices or compositions which may ignite or explode" are unmailable matter.

defendant responded in a truthful manner, the inspectors would have been able to focus the investigation on the defendant at an earlier time, and agency resources could have been conserved. Accordingly, the second prong of the *Rose/Carrier* test is met, and this alone is sufficient to take the case outside the scope of the *Bedore* doctrine. With respect to the third prong of the *Rose/Carrier* test, the court is confronted with an absence of explanation by the courts as to what is meant by the phrase "routine function of administrative duty". To the extent that this phrase can be construed to mean any action by a governmental agency which relates to its ordinary regulatory responsibilities, the court believes that the questioning conducted by the postal inspectors in this instance would qualify as such a "routine exercise of administrative responsibility". The first and fourth prong of the *Rose/Carrier* are not satisfied here. Nevertheless, the § 1001 count should not be dismissed since the *Bedore* doctrine is inapplicable if any one of the prongs of the *Rose/Carrier* test is met.

Alternatively, this court finds that the recent United States Supreme Court decision in *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984) mandates that the motion to dismiss the § 1001 count from the superseding indictment be denied. While the Supreme Court did not expressly address the applicability of the "exculpatory no" doctrine, the decision in *Rodgers* certainly places the viability and scope of the doctrine into question.

In *Rodgers*, the Government appealed a decision of the District Court dismissing an indictment that charged the defendant with making false statements to federal agents. The defendant admitted that he had lied when he told the F.B.I. that his wife had been kidnapped, when, in fact, as the F.B.I. determined on investigation, she had left him voluntarily, and also when he told the Secret Service that his wife was involved in a plot to assassinate the President, when, in fact, the Secret Service, after investigating the charge and upon locating his wife, was told by her that she had left home to get away from her husband. The District Court dismissed the indictment on the ground that in order for a matter to be within the jurisdiction of an agency for the purposes of § 1001, the agency must have the power to make final and binding determinations concerning the subject matter involved, and the agencies in this instance did not possess such power. The Eighth Circuit affirmed the ruling.

The Supreme Court found that "[s]ection 1001 expressly embraces false statements made 'in any matter within the jurisdiction of any department or agency of the United States' " and that the only way in which to narrow the sweep of the statute is through an interpretation of the term "jurisdiction". *Id.* at 1946. The court ruled that the Eighth Circuit's construction of § 1001 was "unduly strained" and interpreted the term "jurisdiction" to encompass matters which come within the authorized functions of an agency or department, as opposed to those matters which are peripheral to the business of the department or agency. *Id.* at 1946–47. The defendant attacked this interpretation of § 1001 on the ground that it made the scope of the statute too broad. The court responded that the question of whether the statute should sweep broadly is for Congress to decide. *Id.* at 1948.

The "exculpatory no" doctrine is a judicially created exception to § 1001. In light of the Supreme Court's focus on the plain language of the statute, and the present status of the doctrine in this circuit, this court finds that the "exculpatory no" doctrine should not provide a basis for the dismissal of the charge under § 1001.

There is no question that the postal inspector's questioning of the defendant was a matter within the jurisdiction of the Postal Service. This agency has the right and the duty to conduct investigations of crimes involving the use of the mails. Thus, the defendant's false denial to the inspectors may be charged under § 1001.