**UNITED STATES of America, Plaintiff,**

**v.**

**Kevin W. JARVIS (1), William A. Bowen (2), and George F. Bonsall (3), Defendants.**

**Cr. No. 86–0439–R.**

United States District Court, S.D. California.

Feb. 17, 1987.

Larry A. Burns, Maria Arroyo Tabin, Asst. U.S. Attys., U.S. Atty's Office, San Diego, Cal., for plaintiff.

Eugene G. Iredale, San Diego, Cal., for defendant Jarvis.

Michael Pancer, San Diego, Cal., for defendant Bowen.

Judy Clarke, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant Bonsall.

MEMORANDUM DECISION
AND ORDER

RHOADES, District Judge.

Defendants motions to dismiss those counts of the Indictment charging the defendants with making false statements in violation of 18 U.S.C. § 1001 came on regularly for hearing on December 1, 1986. Additional argument was heard on December 12, 1986. Larry A. Burns and Maria Arroyo-Tabin, Assistant United States Attorneys, appeared on behalf of the plaintiff UNITED STATES OF AMERICA. Eugene G. Iredale appeared on behalf of defendant Kevin W. JARVIS, Michael Pancer appeared on behalf of defendant William A.

BOWEN, and the Federal Defenders of San Diego, Inc. and Judy Clarke appeared on behalf of defendant George F. BONSALL.

After considering the briefs submitted in support of and in opposition to the motions, the authorities cited therein, and the record before it, the court ruled that Counts Three and Five of the indictment against JARVIS should be dismissed, but that all of the counts against BOWEN and BONSALL should stand. On December 12, 1986, the Court ruled that Count Six against BOWEN also should be dismissed.

BACKGROUND

The indictment in this case centers on events alleged to have occurred on May 5, 1985. Count One alleges that on that date, defendant JARVIS, an agent of the United States Border Patrol, willfully kicked and assaulted Jose Antonio Cisneros, thereby depriving Cisneros of his constitutional rights in violation of 18 U.S.C. § 242. Count Two charges that JARVIS, BOWEN, another Border Patrol agent who was present at the events on May 5, 1986, and BONSALL, a private polygraph operator, conspired to obstruct, impair and frustrate the governments' investigation of the May 5 incident, all in violation of 18 U.S.C. § 371.

Counts Three through Eight are the subject of this Memorandum Decision. Count Three charges that JARVIS violated 18 U.S.C. § 1001 by telling FBI Special Agent David Gomez on May 6, 1985, that he had not kicked Cisneros. Count Four charges BOWEN with violating § 1001 by telling Gomez that he had not seen JARVIS kick Cisneros. Count Five alleges that JARVIS again violated § 1001 on July 9, 1985, by telling Special Agent Jack Feemster of the Office of Professional Responsibility, a department and agency of the United States, that he had not kicked Cisneros. Count Six charges BOWEN under § 1001 for telling Feemster that he had not seen JARVIS kick Cisneros. Counts Seven and Eight charge BONSAL under § 1001 with making false representations to Feemster on two different occasions: first, on July 25,

1985, that JARVIS had taken and passed a polygraph test, and second, on October 2, 1985, that he, BONSALL, had deposited for mailing the original graph charts from JARVIS' polygraph examination. Count nine charges BONSALL with a violation of 18 U.S.C. § 1341.

The defendants argued that Counts Three through Eight of the indictment should be dismissed because the statements made by the defendants come within the "exculpatory no" exception to § 1001 as defined in *United States v. Bedore*, 455 F.2d 1109 (9th Cir.1972). The court agreed as to Counts Three, Five, and Six, and ordered that these counts be dismissed. The court, however, held that Counts Four, Seven and Eight did not come within the "exculpatory no" exception to § 1001, and held that these counts should remain. This Memorancum Decision is intended to reaffirm those rulings, and to elaborate upon the court's reasoning for arriving at that decision.

DISCUSSION

Section 1001 of Title 18 U.S.C. provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The legislative history of § 1001 has been amply covered in numerous opinions. *See, e.g., United States v. Rodgers*, 466 U.S. 475, 477–481, 104 S.Ct. 1942, 1944–47, 80 L.Ed.2d 492 (1984); *United States v. Medina de Perez*, 799 F.2d 540, 542–543 (9th Cir.1986). The statute, as amended in 1934, prohibits not only those false statements that may cause pecuniary or property loss to the government, but also statements that would prevent government agencies from carrying out administrative

or regulatory directives, thereby "perverting" their functions. *Medina de Perez, supra,* 799 F.2d at 542, *citing United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941). Moreover, the Supreme Court stated that notwithstanding the fact that § 1001 is a criminal statute, it should be construed broadly to protect "myriad governmental activities." *Rogers, supra,* 466 U.S. at 480–81, 104 S.Ct. at 1946–47.

■ Despite this Supreme Court ruling indicating § 1001's expansive coverage, the Ninth Circuit recently reaffirmed that the "exculpatory no" doctrine has not expired. *See Medina de Perez, supra,* 799 F.2d at 545 n. 7. The "exculpatory no" doctrine provides that a false statement is not indictable under § 1001 if the false statement was a false denial of guilt by an individual subject to a criminal investigation and that false denial of guilt was made in response to an investigator's questioning. *See, e.g., United States v. Gonzalez-Mares,* 752 F.2d 1485, 1492 (9th Cir.1985). The Fifth Circuit first recognized the doctrine.

In *Paternostro v. United States,* 311 F.2d 298 (5th Cir.1962), the Fifth Circuit held that an exculpatory "no"[1] answer without an affirmative, aggressive, or overt mistatement on the part of the defendant did not come within the scope of § 1001, and reversed the conviction of the defendant for false denials made under oath during an investigation. The court noted that the Internal Revenue Agent who had initiated the interview was performing a policeman's function and concluded that the same rules should apply to all policemen, regardless of whether the government agent acting in that capacity is an FBI agent or an Internal Revenue Agent. *See also United States v. Bush,* 503 F.2d 813, 818 (5th Cir.1974).

The Ninth Circuit first recognized the doctrine in *United States v. Bedore, supra,* 455 F.2d 1109, when it held that the defendant's false statement to an FBI agent in response to that agent's inquiry was not within § 1001's scope. The agent sought Bedore to serve him with a subpoena. When the agent asked Bedore his name, he replied that he was "Tom Halstead." *Id.* at 1110.

In reaching its conclusion, the *Bedore* court reasoned that § 1001 was intended to reach:

> only those false statements that might support fraudulent claims against the Government, or that might pervert or corrupt the authorized functions of those agencies to whom the statements were made.

> \*　　\*　　\*　　\*　　\*　　\*

> The statute was not intended to embrace oral unsworn statements, unrelated to any claim of the declarant to a privilege from the United States or a claim against the United States, given to inquiries initiated by a federal agency, except, perhaps where such a statement will substantially impair the basic functions entrusted by law to that agency.

*Id.* at 1111. The Ninth Circuit in *Bedore* therefore adopted a multi-part test to determine when the "exculpatory no" exception should apply.

Ninth Circuit decisions subsequent to *Bedore,* while clarifying the doctrine, have not eroded it. *See Medina de Perez,* 799 F.2d at 544, 545 n. 7. In *United States v. Rose,* 570 F.2d 1358, 1364 (9th Cir.1978), the Ninth Circuit agreed with the *Bedore* approach, but declined to apply the exception where the defendant had lied to a Customs Official while claiming the privilege of entry into the United States. The *Rose* court distinguished the Fifth Circuit decision in *Bush, supra,* 503 F.2d 813, by noting that the Customs Official's "inquiries were a routine exercise of his *administrative* responsibility [emphasis in

---

**1.** While there is some disagreement among the Circuits as to whether the defendant must limit the exculpatory response to a simple "no", or instead may speak other exculpatory words, the Ninth Circuit has stated that there is not "any meaningful distinction between an exculpatory 'no, I am not guilty,' and a more complete, evasive exculpatory response to a direct question." *Medina de Perez, supra,* 799 F.2d at 546 n. 9.

original]," and that "a truthful answer to the inquiries would not have involved self-incrimination." *Rose, supra,* 570 F.2d at 1364.

In a subsequent decision, *United States v. Carrier,* 654 F.2d 559, 561 (9th Cir.1981), the Ninth Circuit discussed *Rose:*

> *Bedore* is distinguished in *United States v. Rose,* [citation omitted] where the court said that even though the statement is oral, unsworn, and unrelated to a claim against the United States, the *Bedore* doctrine was inapplicable because (1) the declarant [in Rose] was claiming a privilege of entry into the United States; (2) his statement potentially impaired the function of the Custom's Services; (3) the border agent's questions were a 'routine exercise of administrative responsibility'; and (4) a truthful answer would not have involved self-incrimination.

In *Carrier,* border patrol agents asked the defendant whether he was transporting more than $5,000 over the international border. The defendant replied that he was not. A search of the defendant revealed that he was transporting money illegally, and the defendant was convicted on two § 1001 counts.

Rejecting the defendant's argument that *Bedore* mandated that the convictions be reversed, the *Carrier* panel found that *Rose* controlled. The court concluded that the defendant's statements came within § 1001 because he was claiming the privilege of entry into the United States, and that "[t]his alone is enough to take the case outside of the *Bedore* decision." 654 F.2d at 561.[2] The court also noted that "[b]eyond that, the inspector's question was routine and did not involve the possibility of self-incrimination." *Id.*

■ The effect of *Rose* and *Carrier* on the *Bedore* doctrine has been to create what appears to be a five-part test to determine whether the "exculpatory no" doctrine applies, *i.e.,* that to fall within the doctrine; (1) the false statement must be unrelated to a claim to a privilege from the United States or a claim against the government; (2) the declarant must be responding to inquiries initiated by a federal agency or department; (3) a truthful answer would involve self-incrimination; (4) the government's agency's inquiries must not constitute a "routine exercise of *administrative* responsibility;" and (5) the false statement must not "impair the basic functions entrusted by law" to the agency. *See Medina de Perez, supra,* 799 F.2d at 544 and n. 5.[3] The test is phrased in the conjunctive: if the defendant fails to satisfy any one of these criteria, the "exculpatory no" doctrine is inapplicable. *Carrier, supra,* 654 F.2d at 561; *see also United States v. Marusich,* 637 F.Supp. 521, 526 (S.D.Cal.1986).[4] In short, *Rose* and *Carrier* limited the scope of the *Bedore* excep-

**2.** *See* footnote 4, *infra.*

**3.** *Medina de Perez* expressly recognizes a fifth factor to be considered: that the declarant be responding to inquiries initiated by a federal agency or department. 799 F.2d at 544 n. 5. As the "exculpatory no" doctrine is a criminal investigation exception to § 1001 liability, this factor must be satisfied before the "exculpatory no" exception can be triggered. See *id.,* at 547 n. 10, distinguishing *Rodgers, supra,* 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492; *see also* note 8, *infra.*

**4.** It is only by charting the course of the *Bedore* exception through subsequent Ninth Circuit opinions that this statement becomes apparent. *Bedore,* decided in 1971, created a judicial exception to the broad reach of § 1001 liability ("From the statutory history, it is evident that section 1001 was not intended to reach all false statements made to governmental agencies and departments...." 455 F.2d at 1111). *Bedore* listed three factors it considered in reaching its conclusion that Bedore's statements were not actionable under § 1001. 455 F.2d at 1111. The later Ninth Circuit cases, *Rose* and *Carrier,* added to the factors considered by the *Bedore* court two other factors that must also be satisfied before the *Bedore* exception is triggered. *Rose, supra* 570 F.2d at 1364. The end result of this judicial molding was to restrict *Bedore's* reach to the "limited circumstances" where all five criteria are satisfied. *United States v. Gonzalez-Mares,* 752 F.2d 1485, 1492 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). However, if the false statements satisfy all the criteria, the *Bedore* doctrine applies, and the § 1001 charge should be dismissed. *Medina de Perez, supra,* 799 F.2d at 540.

tion; neither they nor subsequent cases, however, have completely eroded it. *Medina de Perez, supra,* 799 F.2d at 544, 545 n. 7.

Applying the "exculpatory no" test in the instant case, the court concludes that JARVIS satisfies the criteria as to both § 1001 counts asserted against him, and BOWEN satisfies the criteria as to Count Six. BONSALL's statements, however, do not fit within the exception.

■ First, there is no dispute that the defendants' false statements are unrelated to a monetary or property claim against the United States. The government, however, argues that the alleged false statements are related to a claim to a privilege against the government, specifically the privilege of being a United States agent. The court rejects this argument. As discussed below, the court finds that Agents Gomez and Feemster were acting in an investigative capacity. JARVIS' and BOWENS' denials of guilt cannot be viewed, except by a severely strained interpretation of the phrase, as a claim to the privilege of being a United States agent. To the extent that they denied guilt, the court finds that BOWEN and JARVIS did so in their capacity as citizens of the United States, not as agents of the government, and therefore they satisfy the first part of the *Bedore/Rose* test.[5] To hold otherwise would result in the anomalous situation where a government employee subject to a criminal investigation is accorded fewer rights than other persons under the laws of the United States.

Second, there is no question that JARVIS and BOWEN responded to inquiries initiated by FBI Agent Gomez and Special Agent Feemster. The facts of the instant case are readily distinguishable from *United States v. Rodgers, supra,* 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984). In *Rodgers,* the defendant, unsolicited by a government agent, falsely accused a third person of a crime, causing a needless investigation and perverting the [FBI's and Secret Service's] "authorized functions to turn [either the FBI or Secret Service] into a Missing Person's Bureau for domestic squabbles." *Id.* at 481.[6]

Third, assuming the truthfulness of the other allegations of the indictment, *i.e.,* that JARVIS did kick Cisneros, the court finds that truthful answers by JARVIS on May 6, 1985, and July 9, 1985, would have been incriminating to him. A truthful statement by BOWEN on May 6, 1985, on the other hand, would not have been incriminating to him. However, a truthful answer by BOWEN to Agent Feemster's inquiries on June 18, 1985, *i.e.,* that he saw JARVIS kick Cisneros, would have been incriminating, in that it would have been evidence that he had earlier lied to Agent Gomez on May 6, 1985, in violation of, *inter alia,* 18 U.S.C. § 371 and 18 U.S.C. § 1001, as charged in Counts Two and Four of the indictment, respectively.

Fourth, contrary to the government's position, the inquiries by Agents Gomez and Feemster did not constitute a "routine exercise of *administrative* responsibility." The court recognizes the difficulty courts have had in interpreting the phrase "routine exercise of administrative responsibility." For example, in *United States v. Marusich,* 637 F.Supp. 521 (S.D.Cal.1986), the court concluded that a postal inspector's questioning involved a "routine exercise of administrative responsibility," although it admitted that it did not know what this element of the test meant. *Id.* at 526. Since *Marusich* was decided, however, the Ninth Circuit has addressed this topic:

> *Rose* did not explain what constitutes a 'routine exercise of administrative responsibility.' However, *Bush,* from which this factor was drawn, does pro-

---

5. At the December 1, 1986, hearing, the court determined that neither of BONSALL'S alleged false statements involved self-incrimination. As failure to satisfy even one of the *Bedore/Rose* criteria takes the statement outside the scope of the exception, *United States v. Carrier, supra,*

654 F.2d at 561, this Memorandum Decision will not address any of BONSALL's other contentions.

6. *See also* discussion at pp. 12–14, *infra.*

vide some insight into the proper analysis. In *Bush,* the defendant had lied to IRS special agents who had inquired about possible kickbacks that he paid to a taxpayer under investigation. The *Bush* court observed that:

> Section 1001 has usually been held inapplicable to statements made to government agents acting in a purely "police" capacity. (citations omitted). Doubts as to whether false statements made to police agents of the federal government fall within the purview of 18 U.S.C. § 1001 are premised on a potential "investigative" exception to § 1001, based on its historical evolution as a statute seeking to prevent the administration of federal government programs from being subverted or frustrated by the false presentation of interested parties. (citations omitted).
>
> \* \* \* \* \* \*
>
> Although the line between 'administration' and 'investigation' cannot be sharply drawn, the argument has been made that this statute was intended to apply only to federal government 'administration' and not intended to compel citizens to answer truthfully every questions put to them in in the course of a federal police or criminal investigation.

*Bush,* 503 F.2d at 815.

Hence, it is when government agents are acting as "police investigators" rather than as "administrators" that this prerequisite for invocation of the "exculpatory no" doctrine is met. (footnote omitted).

*Medina de Perez, supra,* 799 F.2d at 544–45.

The court finds that Agents Gomez and Feemster were acting as "police investigators" rather than "administrators." Cisneros lodged a criminal complaint alleging that JARVIS had kicked him. To hold that subsequent inquiries by an agent for the FBI and an agent for the Office of Professional Responsibility were "routine exercises of administrative responsibility" is to impart to the word "administrative" a

meaning that is somewhat strained. If the court were to accept the government's argument, then any investigation involving a government employee could be characterized as a "routine exercise of administrative function," and the "exculpatory no" doctrine effectively would be eviscerated. In light of the recent pronouncements of the Ninth Circuit in *United States v. Medina de Perez, supra,* 799 F.2d at 545 and n. 7, this cannot be the case.

The court recognizes that the Supreme Court in *United States v. Rodgers, supra,* 466 U.S. 475, 479, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492, stated that "[a] criminal investigation surely falls within the meaning of 'any matter' [within the jurisdiction of any department or agency of the United States]." There is no question then that § 1001 may apply to a criminal investigation. In fact, a commentator has suggested that the *Rodgers* decision "casts doubt upon the validity of the holding in *Bedore,"* and cites to the above-quoted language in *Rodgers.* See Federal Defenders of San Diego, Inc., *Defending a Federal Criminal Case,* ¶ 11.07.02, at 11–27 (1986).

However, as this court noted *supra,* the facts of *Rodgers* are distinguishable. In *Rodgers,* the defendant, unsolicited by a government agent, made affirmative misrepresentations of fact accusing a third person of a crime. The court reasoned that the defendant's actions caused a needless investigation that perverted the government agencies' [i.e., the FBI and Secret Service] "authorized functions," by turning the agencies "into a Missing Person's Bureau for domestic squabbles." *Rodgers, supra,* 466 U.S. at 481, 104 S.Ct. at 1947.

In *Medina de Perez, supra,* the Ninth Circuit addressed this issue:

> However, we note that *Bedore* recognized that in such cases [as *Rodgers* ], the defendant's conduct would pervert an agency's authorized functions.

799 F.2d at 547 n. 10. The *Medina de Perez* court then quoted *Bedore:*

> Typical of the kind of statements that are within the purview of section 1001 are false reports of crime made to feder-

al law enforcement agencies that may engender goundless federal investigations.

*Id., quoting Bedore, supra,* 455 F.2d at 1111.

A fair conclusion to be drawn from footnote 10 of the *Medina de Perez* decision is that *Rodgers* is, and should be distinguished on its facts. While § 1001 may apply to criminal investigations, such application should be limited to nonincriminatory affirmative misrepresentations [as in *Rodgers*] "made to federal law enforcement agencies that engender groundless federal investigations."[7] As discussed further below, such is not the context of the instant case.

The fifth part of the *Bedore/Rose* test is that the false statement must not "impair the basic functions entrusted by law" to the agency. The government argues that in the instant case, JARVIS' and BOWEN's untruthful replies to the government agents' questions impaired the investigative functions of the respective agencies.

In *Marusich, supra,* 637 F.Supp. 521, the court concluded that defendant's untruthful answer impaired the Postal Service's functioning. In *Marusich,* postal inspectors questioned the defendant in connection with the possible mailing of a bomb. After a mistrial because the jury was unable to reach a unanimous verdict, the grand jury returned a superseding indictment, charging the defendant with a § 1001 violation for falsely stating during the questioning that he had not vandalized the bomb recipient's car. During the trial, the defendant admitted vandalizing the car. The court reasoned that had the defendant told the truth, the inspectors could have focused their investigation on him earlier, and refused to dismiss the § 1001 count on the basis of the *Bedore* doctrine.

The court notes that Judge Brewster's opinion in *Marusich* is not binding on it. However, even if it were, in the instant

case, there is no such question concerning the investigation's focus, as JARVIS was the only person Cisneros alleged kicked him. A truthful answer by JARVIS would not have enabled the investigating agents to "focus" their investigation on him at an earlier date; on the contrary, a truthful answer would have incriminated JARVIS.

It is obvious that an untruthful reply to an inquiry in a criminal investigation will in some way thwart the investigators. However, the *Bedore* doctrine was intended as a criminal investigation exception to the expansive reach of § 1001. It was fashioned because the *Bedore* court, relying on the statutory history, believed that:

> it is evident that section 1001 was not intended to reach all false statements made to governmental agencies and departments, but only those false statements that might support fraudulent claims against the Government, or that might pervert or corrupt the authorized functions of those agencies to whom the statements were made.

455 F.2d at 1111.

The court in *Medina de Perez* recognized this and stated:

> The *Bedore* court implicitly held that this false statement, *given in response to inquiries by government investigative agents in an interview that the defendant did not initiate,* was not the type of statement that perverts an investigative agency's functions. (emphasis added).

799 F.2d at 546. Where, as here, the alleged false statements were in reply to inquiries by government investigative agents in an interview that the defendants did not initiate, it cannot be said that the statements perverted or impaired the investigative agencies' functions. Certainly police do not expect criminal suspects to answer every question truthfully. Here, there is no indication that the government agents did not continue vigorous investiga-

---

7. *See also Bush, supra,* 503 F.2d at 818, *quoting Paternostro, supra,* 311 F.2d at 305.:

   [The defendant] did not aggressively and deliberately initiate any positive or affirmative

statement calculated to pervert the legislative functions of government.

tion of all leads until they were personally satisfied that they had obtained the truth. *Id.* [8]

Moreover, even if this court were to accept the government's position that the alleged false statements "impaired" the agencies' functions, that is not the end of the inquiry. The government's position appears to be that any false statement in response to an inquiry during an investigation would impair the government agency's function. If this is so, then the "exculpatory no" doctrine fairly can be said to have been laid to rest in the Ninth Circuit, for it would be impossible to satisfy all of the prongs of the *Bedore/Rose* test. This result is particularly ironic in light of the fact that the "exculpatory no" doctrine was fashioned as a criminal investigation exception to § 1001 liability, and the Ninth Circuit's recent reaffirmation of the *Bedore* doctrine's vitality, albeit in "limited circumstances." *Medina de Perez, supra,* 799 F.2d at 545 n. 7.

Such a quandry, if it exists, can be resolved by referring to language in the *Bedore* opinion, which first set out the "impairment" requirement:

> The statute was not intended to embrace oral, unsworn statements, unrelated to any claim of the declarant to a privilege from the United States or to a claim against the United States, given in response to inquiries initiated by a federal agency or department, except, perhaps, where such a statement will *sub-stantially impair* the basic functions entrusted by law to that agency. (emphasis added).

455 F.2d 1111. The *Bedore* court phrased the impairment requirement as one of "substantial impairment." The *Rose* court expressly agreed with the *Bedore* panel, citing with approval the above passage from *Bedore.* 570 F.2d at 1364. The court in *Medina de Perez, supra,* 799 F.2d at 544, noted that the Ninth Circuit in *Rose* reaffirmed its approval of the *Bedore* criteria, although it clarified *Bedore* by adding two new factors, *i.e.,* the "routine exercise of administrative responsibility," and "self-incrimination" criteria. The question then becomes whether the alleged false statement substantially impaired "the basic functions entrusted by law" to the governmental agencies.

In the instant case, the court has already determined that the agents were acting in their criminal investigative capacity. The investigation had already focused upon JARVIS; he was, after all, the only suspect. The court is satisfied that the government agents continued their investigation of all leads until they were personally satisfied that they had obtained the truth. *Medina de Perez, supra,* 799 F.2d at 546. Under the facts of this case, the court cannot conclude, even assuming the falsity of JARVIS' statements, that they substantially impaired the agent's investigative functions.

---

8. The government argues that *Medina de Perez* should be limited to its facts and that the "exculpatory no" doctrine should apply only in a post-arrest, custodial context. The court finds this argument unconvincing.

It is true that *Medina de Perez* involved statements made in a post-arrest, custodial context. However, the court stated:

> We agree with *Bedore's* holding [that a false statement given in response to inquiries by government investigative agents in an interview the defendant did not initiate is not the type of statement that perverts an investigative agency's function] and conclude that *Perez's* case presents *an even stronger case for applicability* of the exception. (emphasis added).

799 F.2d at 546. The *Medina de Perez* court held that in a post-arrest context, *Bedore's* appli-cation is strongly indicated; however, the court did not expressly limit *Bedore's* reach to such a context.

While the court recognized that the *Bedore* doctrine is applicable only in "limited circumstances," 799 F.2d at 545 n. 7, *citing Gonzalez-Mares, supra,* 752 F.2d at 1492, the court did not specify what those "limited circumstances" were. The court's statements concerning *Rodgers* in footnote 10, 799 F.2d at 547, indicate that the court would limit *Rodgers* to those instances where the § 1001 declarant initiated, unsolicited by government agents, an affirmative statement that "engender[ed] groundless federal investigations." Such a view does not suggest that the Ninth Circuit intended the *Bedore* doctrine to be limited to a post-arrest, custodial context.

As to BOWEN, the court has already concluded that his May 6, 1985, statements, charged in count four, did not involve self-incrimination. However, BOWEN's June 18, 1985, statements, charged in Count Six of the indictment, did involve self-incrimination. For the same reasons just outlined, the court concludes that under the facts of this case, BOWEN's June 18, 1985, statements to Agent Feemster did not substantially impair Agent Feemster's investigative functions.

ACCORDINGLY, all criteria of the *Bedore-Rose* test having been satisfied, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On May 5, 1985, the events which give rise to this indictment occurred. While there is dispute about exactly what did occur, the pleadings and indictment indicate that the government alleges that JARVIS, a Border Patrol Agent, kicked Cisneros, under circumstances which would make such actions a violation of 18 U.S.C. § 242 as alleged in Count 1. BOWEN, also a Border Patrol Agent, was present and witnessed the interaction between JARVIS and Cisneros.

2. FBI Agent Gomez, acting in a criminal investigative capacity questioned JARVIS on May 6, 1985. Gomez asked, *inter alia*, whether JARVIS had kicked Cisneros. JARVIS stated that he had not.

3. On May 6, 1985, BOWEN, in response to questioning by FBI Agent Gomez, stated that he had not seen JARVIS kick Cisneros on May 5, 1985.

4. On July 9, 1985, Office of Professional Responsibility Special Agent Feemster, acting in a criminal investigative capacity, questioned JARVIS. In response to questioning, JARVIS stated again that he had not kicked Cisneros.

5. On June 18, 1985, Agent Feemster again acting as a criminal investigator questioned BOWEN. In response to Feemster's questioning, BOWEN stated that he had not seen JARVIS kick Cisneros.

6. The subject matter of agents Gomez' and Feemster's inquiries, i.e., whether a civil rights or other crime had occurred, are within the criminal investigative jurisdictions of the FBI and OPR respectively.

7. The statements made by BOWEN and JARVIS were oral and exculpatory.

8. The inquiries by Agents Gomez and Feemster were not in the routine exercise of administrative responsibility.

## CONCLUSIONS OF LAW

1. The Court concludes that the May 6, 1985 statements of both defendants, the June 18 statements of BOWEN and the July 9 statement of JARVIS were unrelated to a claim to a privilege from the United States or a monetary claim against the United States.

2. The Court concludes that the alleged false statements were made in response to inquiries initiated by Agents Gomez and Feemster.

3. Assuming for purposes of ruling the truthfulness of the other allegations of the indictment, i.e., that JARVIS in fact did kick Mr. Cisneros, the court concludes that truthful answers by JARVIS on May 6 and July 9, 1985, would have been incriminating to him. The court concludes that a truthful answer by BOWEN on May 6, 1985, would not have been incriminating to him. However, a truthful answer on June 18, 1985, i.e., that he saw JARVIS kick Cisneros, would have been incriminating in that it would have been evidence that he had earlier lied to investigating agents on May 6, 1985, in violation of, *inter alia*, 18 U.S.C. § 371 and 18 U.S.C. § 1001 as charged in Counts Two and Four of the indictment respectively.

4. The Court concludes that the interrogating agents at the time of all four statements were acting as criminal investigators to determine whether JARVIS had committed a crime and whether charges would be brought. The Court further concludes that the inquiries by Gomez and Feemster were not in the routine exercise of administrative responsibility.

5. Finally, the court concludes that the statements made did not impair the basic functions entrusted by law to the respective agencies. The investigators involved continued their vigorous investigation of all leads until personally satisfied they had obtained the truth. The statements of BOWEN constituted in essence a denial of guilt of a crime.

6. In short, the Court finds that dismissal of Counts Three, Five and Six is required because these counts within the "exculpatory no" exception to 18 U.S.C. § 1001.

### ORDER

Based on the foregoing, it is hereby ordered that JARVIS' motion to dismiss Counts Three and Five is granted.

BOWEN's motion to dismiss Count Four is denied. His motion to dismiss Count Six is granted.

IT IS SO ORDERED.