**UNITED STATES of America, Plaintiff,**

**v.**

**William S. ARMSTRONG, Defendant.**

**No. IP 88–106–CR.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 30, 1989.

Deborah J. Daniels, U.S. Atty., Linda S. Chapman, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff.

Don A. Tabbert, Indianapolis, Ind., for defendant.

## ENTRY

DILLIN, District Judge.

This cause is before the Court on defendant's motion to dismiss Count 2 of the indictment. For the following reasons, the Court grants the motion.

### Background

This action was commenced on September 28, 1988, when a federal grand jury returned a two count indictment against defendant, William S. Armstrong (Armstrong). Count 1 of the indictment charged Armstrong with converting to his personal use federal funds which the Indiana University Foundation (IUF) had received for the benefit of Indiana University. Count 2 charged that Armstrong made false statements to an FBI agent who was investigating the alleged conversion of federal funds, in violation of 18 U.S.C. § 1001.

On May 16, 1989, this Court dismissed Count 1 of the indictment finding that it was barred by the statute of limitations and the rule against duplicitous counts. However, the Court reserved ruling on the motion to dismiss Count 2 because serious questions remained which had not yet been fully briefed by the parties. The parties thereafter briefed the Court regarding those issues; thus defendant's motion to dismiss Count 2 is now ripe for consideration.

## Discussion

Count 2 of the indictment charges that Armstrong gave false statements to an FBI agent in violation of 18 U.S.C. § 1001. Section 1001 provides, in pertinent part, as follows:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes any false, fictitious or fraudulent statements or representations ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Armstrong seeks dismissal of Count 2 under the "exculpatory no" exception to § 1001. This judicial exception was articulated first by Judge Chesnut in *United States v. Stark*, 131 F.Supp. 190 (D.Md. 1955). After a careful review of the legislative history of § 1001, Judge Chesnut determined that the statute was enacted "to protect the government from being the victim of some positive statement ... which has the tendency and effect of perverting its normal proper activities." *Id.* at 205 (citing *United States v. Gilliland*, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941)). Thus, he concluded that § 1001 was intended to reach false statements which were volunteered to induce government action, but not to reach merely exculpatory responses to government initiated questioning. *Id.* at 205–06; *Accord United States v. Cogdell*, 844 F.2d 179, 182 (4th Cir.1988); *United States v. Medina*, 799 F.2d 540, 541–45 (9th Cir.1986); *Paternostro v. United States*, 311 F.2d 298, 305 (5th Cir.1962).

Courts have also recognized that application of § 1001 to mere exculpatory denials in response to government initiated questioning would violate the Fifth Amendment's prohibition against compelled self-incrimination. As the Fourth Circuit recently noted in *Cogdell*, "a criminal prosecution for denying guilt to a law enforcement officer is offensively close to a prosecution for a statement protected by the constitutional privilege against self-incrimination." *Cogdell*, 844 F.2d at 182; *Accord United States v. Lambert*, 501 F.2d 943,

946 n. 4 (5th Cir.1974) (en banc) ("[T]he judicial gloss put on § 1001 by the 'exculpatory no' decisions originates at least in part from latent distaste for an application of the statute that is uncomfortably close to the Fifth Amendment."); *United States v. Russo*, 699 F.Supp. 1344 (N.D.Ill.1988) ("[G]iven the statute's tension with this constitutional right [the Fifth Amendment], courts are reluctant to employ § 1001 in the context of criminal investigations where the individual has not affirmatively sought to provide the government with misinformation.").

For these reasons, the weight of authority supports application of the "exculpatory no" exception to unsworn, oral, and allegedly false exculpatory responses to questions posed by investigative agents. Indeed, all five of the circuit courts of appeal which have considered the exception have adopted it. *United States v. Cogdell*, 844 F.2d 179, 182 (4th Cir.1988); *United States v. Medina*, 799 F.2d 540, 541–45 (9th Cir. 1986); *United States v. Thevis*, 469 F.Supp. 490, 513–14 (D.Conn.), *aff'd*, 614 F.2d 1293 (2d Cir.1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980); *United States v. Chevoor*, 526 F.2d 178, 183 (1st Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); *Paternostro v. United States*, 311 F.2d 298, 305 (5th Cir.1962). In addition, the Seventh Circuit has recognized the exception in dicta. *United States v. Russo*, 699 F.Supp. 1344 (N.D.Ill.1988) (citing *United States v. King*, 613 F.2d 670 (7th Cir.1980) (Exception applies when the defendant responds to government questioning with negative answers at a time when he is unaware that he is under investigation and when he is not making a claim against the government).

The Fourth and Ninth Circuits have developed a five-part test for application of the "exculpatory no" exception. Under this test, a false statement does not violate § 1001 when:

(1) it was not made in pursuit of a claim to a privilege or a claim against the government;

(2) it was made in response to inquiries initiated by a federal agency or department;

(3) it did not pervert the basic functions entrusted by law to the agency;

(4) it was made in the context of an investigation rather than of a routine exercise of administrative responsibility;

(5) it was made in a situation in which a truthful answer would have incriminated the declarant.

*United States v. Cogdell*, 844 F.2d 179, 183 (4th Cir.1988); *United States v. Medina*, 799 F.2d 540 (9th Cir.1986). Armstrong's statements clearly satisfy each of the above criteria.

First, it is clear that Armstrong did not make his exculatory denials of guilt in pursuit of a claim against the United States. Second, it is also certain that he was responding to inquiries initiated by a federal agency, namely, the FBI.

Third, Armstrong's denials did not have the potential to pervert the "basic functions entrusted by law to the agency." *Id.* The allegedly false statements charged against Armstrong are that he denied that he used IUF funds for his personal expenses, denied that other personnel had used IUF funds for their personal expenses, and denied that he was aware that other personnel had accumulated large outstanding cash advance balances. As the Fifth Circuit recognized in the following excerpt from *Paternostro*, such exculpatory denials do not pervert the basic functions of the FBI:

> But can it be said that when an accused person, a potential defendant, a suspect, grants an agent of the F.B.I. an interview and, in reply to an incriminating question, knowingly makes a negative answer, that truth and morality, but not the law, requires an affirmative reply, such answer perverts the authorized function of the Bureau? Is the authorized function of the Bureau to extract from the suspect only the truth, or, in view of the Fifth Amendment proscribing compulsory self-incrimination, to hear and record only such statement as the accused desires freely and voluntarily to make?
>
> . . . .
>
> While the Special Agent may have been disappointed that defendant would not truthfully answer himself into a felony conviction, we fail to see that his investigative function was in any way perverted. The only possible effect of exculpatory denials, however false, received from a suspect such as defendant is to stimulate the agent to carry out his function. *Paternostro v. United States*, 311 F.2d 298, 303–304 (5th Cir.1962) (citing *United States v. Davey*, 155 F.Supp. 175 (S.D.N.Y.1957) and *United States v. Philippe*, 173 F.Supp. 582 (S.D.N.Y. 1959);

*Accord United States v. Jarvis*, 653 F.Supp. 1396, 1402–03 (S.D.Cal.1987) ("Certainly police do not expect criminal suspects to answer every question truthfully. Here, there is no indication that the government agents did not continue vigorous investigation of all leads until they were personally satisfied that they had obtained the truth.").

In contrast to mere exculpatory denials, courts have held that the declarant impairs an agency's functioning by making "discursive voluntary statement[s] involving a suggestion that persons other than the maker of the statement are guilty of federal crimes." *United States v. Tabor*, 788 F.2d 714, 718 (11th Cir.1986); *United States v. Russo*, 699 F.Supp. 1344, 1347 (N.D.Ill.1988) ("[A]n attempt to fabricate an alternative set of facts intended to pervert the functioning of the F.B.I." falls within § 1001); *See United States v. Rodgers*, 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984) (§ 1001 applied when defendant lied in telling the FBI that his wife had been kidnapped and in telling the Secret Service that she was going to kill the President, thereby causing the agencies to expend over 250 investigatory hours to locate her). This authority squares with the Seventh Circuit's requirement that the exception is limited to "negative answers . . . without affirmative discursive falsehood." *United States v. King*, 613 F.2d

670, 674 (7th Cir.1980) (citing *Paternostro v. United States,* 311 F.2d 298). Because the indictment only alleges that Armstrong made denials of his own guilt, rather than fabricating a statement implicating others, his statements did not pervert the functions of the FBI.

Fourth, Armstrong's denials were made in the context of an investigation rather than in the exercise of the agency's administrative duties. As noted above, the Seventh Circuit imposes the additional requirement that the defendant be unaware that he is under investigation at the time he made his denials of guilt. In the case at hand, it is undisputed that Armstrong was not aware that he was under investigation by the FBI at the time of Agent Stohlman's interview. In his affidavit, Armstrong notes that Agent Stohlman assured him three times that he was not a subject or target of the investigation, but only a witness. The government does not dispute this fact. Further, it is undisputed that the interview was very informal in that Armstrong was neither placed under oath nor given Miranda warnings.

In similar circumstances, courts have noted that it would be fundamentally unfair to apply § 1001 to statements made to government agents when the defendant was not aware that he was under investigation. For example, in *United States v. Ehrlichman,* 379 F.Supp. 291 (D.D.C.1974), Judge Gesell set aside a verdict of guilty on a § 1001 charge because the "extremely informal circumstances" of the FBI interview were not sufficient to "alert the person interviewed to the danger that false statements may lead to a felony conviction." *Id.* at 292. Similarly, in dismissing the § 1001 count against the defendant, another district court noted that

> [p]ermitting § 1001 to be used where the person is speaking informally with an F.B.I. agent would "undermine the safeguards that are normally provided in perjury prosecutions, primarily the formality of the oath, while permitting sanctions as great as those under perjury statutes." The individual might then be forced to prepare a defense based upon the agent's notes, which do not purport

to be a verbatim transcription of either the questions posed or the answers given. *United States v. Thevis,* 469 F.Supp. 490, 513–14 (D.Conn.) *aff'd,* 614 F.2d 1293 (2d Cir.1979) (quoting *United States v. Chevoor,* 526 F.2d 178, 183 (1st Cir. 1975)).

Indeed, in his affidavit, Armstrong stated (and the government does not dispute) that he did not have the interview recorded or make notes of what transpired because Agent Stohlman repeatedly assured him that he was only a witness and not a suspect. Thus, it would be fundamentally unfair to allow the government to go forward with its prosecution of the false statement charges against Armstrong. *Id.* Indeed, as the Fourth Circuit has noted, application of the "exculpatory no" exception is required in cases such as this to aid in "protecting defendants from prosecutorial overkill or invasion of areas bordering on the constitutional protection against forced self-incrimination." *Cogdell,* 844 F.2d at 183–84.

Fifth, assuming *arguendo* the truth of the rest of the indictment, an admission by Armstrong that he used IUF funds for personal purposes would have incriminated him—establishing that he had converted alleged federal funds for his personal use. Thus, Armstrong's motion to dismiss meets the five requirements for applying the "exculpatory no" exception.

Moreover, as Armstrong's briefs point out, the "exculpatory no" exception has been applied at the motion to dismiss stage in factually analogous cases. *Paternostro v. United States,* 311 F.2d 298 (5th Cir. 1962) (Court of appeals held that district court erred in not granting the motion to dismiss an indictment charging defendant with falsely denying that she had received "graft money" and falsely denying that others had received "graft money"); *United States v. Jarvis,* 653 F.Supp. 1396 (S.D. Cal.1987) (District court dismissed indictment which charged that defendant falsely denied assaulting a citizen and denied that he observed another person assault the citizen).

*Conclusion*

For the foregoing reasons, Armstrong's statements come within the "exculpatory no" exception. Therefore, Armstrong's allegedly false denials of guilt do not constitute a violation of 18 U.S.C. § 1001. Accordingly, the Court grants defendant's motion to dismiss Count 2 of the indictment.

## JUDGMENT

The Court having this day filed its entry in which it sustained the defendant's motion to dismiss Count 2 of the indictment, which reads as follows: (H.I.)

IT IS CONSIDERED AND ORDERED that said Count 2 be and it is hereby dismissed.

And the Court having heretofore sustained the motion of the defendant to dismiss Count 1 of the indictment

IT IS FINALLY CONSIDERED, ORDERED AND ADJUDGED that the indictment be, and it is hereby dismissed in its entirety, with prejudice.