Filed 10/23/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.W., a Person Coming Under the Juvenile Court Law. | B303310 |
| | (Los Angeles County Super. Ct. No. TJ23502) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| J.W., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melissa N. Widdifield, Judge. Affirmed.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle, Deputy Attorney General, and

Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Under the "routine booking question" exception to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), *Miranda* warnings need not be given before a suspect being booked into custody is asked about his "name, address, height, weight, eye color, date of birth, and current age." (*Pennsylvania. v. Muniz* (1990) 496 U.S. 582, 601-602 (*Muniz*) (plur. opn. of Brennan, J.).) But what if any of these core "booking questions"—in this case, the suspect's age and date of birth—is an element of the crime with which he is ultimately charged? Does the routine booking question exception still apply, or is the suspect's answer subject to exclusion because asking the question in that particular case was "reasonably likely to elicit an incriminating response from the suspect" (*Rhode Island v. Innis* (1980) 446 U.S. 291, 301 (*Innis*))? Consistent with our Supreme Court's recent decision in *People v. Elizalde* (2015) 61 Cal.4th 523 (*Elizalde*), we hold that the routine booking question exception categorically applies to all of the core "booking questions" enumerated in *Muniz* and authorizes the admission of the defendant's answers to those specific questions into evidence "without [the need to] assess[] th[ose questions'] incriminatory nature on a case-by-case basis." (*Id.* at p. 535.) We accordingly affirm the juvenile adjudication in this case.[1]

---

[1] On August 27, 2020, after briefing was concluded, defendant filed a request that the court dismiss his appeal. Because the case raises "issues [that] are important and of continuing interest," we deny defendant's request to dismiss in order to resolve the issues presented herein. (*Burch v. George* (1994) 7 Cal.4th 246, 253, fn. 4; Cal. Rules of Court, rule 8.316(b)(2).)

## FACTS AND PROCEDURAL BACKGROUND

I. **Facts**

    A. *The crime*

On November 15, 2019, 16-year-old J.W. (minor) took off running after he made eye contact with two Los Angeles Police Department officers who encountered him on the street. The officers gave chase. As he fled, minor discarded a backpack he had been wearing. After catching up to minor in a laundromat, the officers retrieved the backpack. The backpack contained a loaded, semi-automatic handgun, with one round in the chamber. As he was being handcuffed, minor spontaneously told the officers that he was carrying the gun for protection.

    B. *Post-arrest*

The officers transported minor to the station house to be booked. As part of the booking process, minor was asked his age and date of birth. He replied that he was 16 and provided his birthdate. Minor was read his *Miranda* rights, waived them, and repeated that he was carrying the gun for protection.

II. **Procedural Background**

The People filed a petition asking the juvenile court to declare minor a "ward" based on the allegation that he had committed the felony crime of being a minor in possession of a firearm (Pen. Code, § 29610).

The matter proceeded to trial in December 2019. After the prosecutor rested the People's case-in-chief, minor pointed out that the People had not introduced any evidence of minor's age, which is an element of the sole offense alleged in the petition. Over minor's objections based on hearsay, lack of foundation, and *Miranda*, the juvenile court allowed the prosecutor to recall one of the arresting officers to testify that (1) he asked minor his age

3

and date of birth, which minor provided during the booking process, (2) the officer subsequently "verified" minor's age and date of birth by running "department resources," and (3) the officer also verified that information with the California Department of Justice.

The juvenile court sustained the petition, designated the sustained offense as a felony, ordered that minor be placed at home on probation, and directed that minor live in his father's home in Glendale, Arizona.

Minor filed this timely appeal.

## DISCUSSION

Minor argues that there is insufficient evidence to support his adjudication as a ward because (1) the statements he made to the booking officer about his age and date of birth are inadmissible under *Miranda*, and (2) without those statements, the People did not prove that he was a *minor* in possession of a firearm. Minor is correct that the People are required to prove every element of offenses against juveniles beyond a reasonable doubt (*In re Miguel L.* (1982) 32 Cal.3d 100, 105), and that a defendant's status as a minor is certainly an element of being a minor in possession of a firearm (Pen. Code, § 29610); *In re I.A.* (2020) 48 Cal.App.5th 767, 778). Consequently, the validity of the juvenile court's order sustaining the allegations against minor turns on whether *Miranda* bars admission of the statements he made about his age and date of birth during the booking process.[2] We independently review the legal contours of

---

[2]    In light of our conclusion that *Miranda* does not bar the admission of his answers, we have no occasion to address whether the rules of evidence bar the officer's testimony that he

4

*Miranda*'s rule as well as whether *Miranda* applies to the particular statement in a case.  (*People v. Cromer* (2001) 24 Cal.4th 889, 901 [meaning of constitutional law]; *People v. Gamache* (2010) 48 Cal.4th 347, 385 [application of *Miranda*].)

"*Miranda* established the now-familiar rule that prosecutors may not admit a suspect's statements in their case-in-chief against the suspect-defendant unless: (1) the defendant was advised that (a) 'he has a right to remain silent,' (b) anything he says 'may be used as evidence against him,' (c) 'he has a right to the presence of an attorney,' and (d) the defendant will be provided an attorney if he cannot afford one; (2) the defendant waived those rights, either expressly (by affirmatively indicating a wavier) or implicitly (by answering questions); and (3) prior to making the statements to be admitted, the defendant did not invoke either his right to remain silent or his *Miranda* right to an attorney." (*People v. Orozco* (2019) 32 Cal.App.5th 802, 811, quoting *Miranda, supra*, 384 U.S. at pp. 444-445, 473-474, 476; *People v. Jackson* (2016) 1 Cal.5th 269, 338-339 (*Jackson*).) *Miranda*'s protections apply to juveniles as well as adults.  (*In re Roderick P.* (1972) 7 Cal.3d 801, 810-811.)

*Miranda*'s protections only apply, however, to statements made in the course of "custodial interrogation."  (*Miranda, supra*, 384 U.S. at 444.)  There is no doubt that minor was in police "custody" when he was being booked, so the critical question is whether the questions put to him by the booking officer constituted "interrogation."  For purposes of *Miranda*, "interrogation" means (1) "express questioning," or (2) "any words or actions on the part of the police (other than those normally

___

was able to verify minor's age and date of birth through other sources.

5

attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Innis, supra*, 446 U.S. at p. 301.)  What matters most is "'the perceptions of the suspect,'" not "'the intent of the police.'" (*Ibid.*; *Muniz, supra*, 496 U.S. at p. 601 (plur. opn. of Brennan, J.).)

Not all responses to express questioning by law enforcement are barred by *Miranda*.  As is most pertinent here, the United States Supreme Court in *Muniz* held that a suspect's answers to express questions during the booking process regarding the suspect's "name, address, height, weight, eye color, *date of birth*, and *current age*" are not barred by *Miranda*, even when not preceded by the above described *Miranda* warnings. (*Muniz, supra*, 496 U.S. at pp. 586, 601 (plur. opn. of Brennan, J.), italics added; *id.* at p. 608 (conc. & dis. opn. of Rehnquist, J.).) *Muniz* referred to this as the "'routine booking question' exception" to *Miranda*.  (*Id.* at p. 601 (plur. opn. of Brennan, J.).)

Because in this case some of the booking questions were used to prove an element of the offense alleged against minor, this case squarely presents the following question:  Does the routine booking question exception to *Miranda* still apply when the questions posed—here, date of birth and current age—fall squarely within *Muniz*'s core definition of "booking questions" but, on the facts of the specific case, are nevertheless "reasonably likely to elicit an incriminating response from the suspect" (*Innis, supra*, 446 U.S. at p. 301)?

There is a split of authority on how to answer this question.

In *Elizalde*, our Supreme Court strongly suggested that the routine booking question exception still applies.  There, the issue was whether a suspect's answers to booking questions regarding

his gang affiliation fell within the exception.  The court held they did not.  (*Elizalde, supra*, 61 Cal.4th at p. 538.)  In reaching this conclusion, the court drew a distinction between "the basic biographical data contemplated in *Muniz*" (that is, the seven questions bearing on "basic identifying biographical data" specifically identified in *Muniz*) and other "questions asked during booking that are reasonably related to administrative concerns."  (*Id.* at pp. 535-536, 538.)  *Elizalde* held answers to booking questions regarding the categories of biographical data listed in *Muniz* "may be admitted without assessing their incriminatory nature on a case-by-case basis," while answers to *other* booking questions could be admitted only if the questions fell outside the usual test for "'interrogation'"—that is, if the questions were not "'reasonably likely to elicit'" a response from the suspect that was incriminating *in that case.*  (*Id.* at pp. 535, 538.)  Because the booking question regarding gang affiliation did not deal with one of the seven categories of "basic identifying biographical data" set forth in *Muniz*, and was reasonably likely to elicit an incriminating answer in light of the gang allegations likely to be at issue in Elizalde's prosecution, the court held that *Miranda* barred admission of his answers.  (*Id.* at p. 540.)  Post-*Elizalde* opinions from the Courts of Appeal have adhered to the distinction drawn by *Elizalde*.  (E.g., *People v. Roberts* (2017) 13 Cal.App.5th 565, 574-576 [applying distinction, as regarding gang affiliation]; *People v. Villa-Gomez* (2017) 9 Cal.App.5th 527, 536-537 [same].)

The United States Court of Appeals for the Ninth Circuit (the Ninth Circuit) has taken a different approach.  In the Ninth Circuit, any and all questions asked during the booking process—even if those questions seek any of the seven categories of "basic

7

identifying biographical data" enumerated in *Muniz*—are subject to exclusion under *Miranda* if "a police officer has reason to know that [the] suspect's answer may incriminate him." (*United States v. Henley* (9th Cir. 1993) 984 F.2d 1040, 1042 ["even routine questioning may amount to interrogation"]; accord, *United States v. Williams* (9th Cir. 2016) 842 F.3d 1143, 1147 [applying this rule, albeit as to gang affiliation outside *Muniz*'s seven categories]; *United States v. Equihua-Juarez* (9th Cir. 1988) 851 F.2d 1222, 1226-1227 [applying this rule, albeit as to name and place of birth]; *United States v. Gonzalez-Sandoval* (9th Cir. 1990) 894 F.2d 1043, 1046-1047 [same].) Applying this approach, *United States v. Disla* (9th Cir. 1986) 805 F.2d 1340, 1347, held that a suspect's answer to a booking question about his current address was inadmissible under *Miranda* because it could be used to implicate him for "cocaine and cash" police discovered at his residence during the execution of an unrelated search warrant.

As one would expect, minor urges us to follow the Ninth Circuit's approach while the People urge us to follow the California Supreme Court's approach. We choose to follow the California Supreme Court's approach, and we do so for three reasons.

First, and most obviously, we follow the path staked out for us by our Supreme Court in *Elizalde* because it is the Supreme Court's role to blaze the trails and our role to follow the trail so blazed. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456 ["Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction"].)

Second, we agree with *Elizalde*'s implicit conclusion that its approach is the approach more consistent with *Muniz* itself. Like

8

*Elizalde*, *Muniz* also drew a distinction between the seven categories of basic biographical data falling within its "'routine booking question' exception" to *Miranda* and other "question[s] asked during the booking process," which it said did not "fall[] within that exception." (*Muniz, supra*, 496 U.S. at pp. 601-602 & fn. 14 (plur. opn. of Brennan, J.).) What is more, *Muniz* chose to define a "'routine booking question' *exception*." (*Id.* at 601, italics added.) If, as the Ninth Circuit cases hold, the default test for "interrogation" still applies to questions regarding the seven categories of basic biographical data listed in *Muniz*, then *Muniz*'s "exception" would still be applying *Miranda*'s rules regarding what constitutes interrogation but with an overlay that rebuttably presumes that booking questions regarding the seven *Muniz* categories are not reasonably likely to elicit an incriminating response. In our view, reading *Muniz* in this way means that it is still subject to—and hence not excepted from—*Miranda*, and thus is not really, as *Muniz* purported to create, a "routine booking question *exception*."

Lastly, *Elizalde* is more consistent with the rationale underlying *Miranda*. *Miranda* created its prophylactic protections "[t]o safeguard a suspect's Fifth Amendment privilege against self-incrimination from the 'inherently compelling pressures' of custodial interrogation" (*Jackson, supra*, 1 Cal.5th at pp. 338-339) because, when present, those "pressures . . . work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely" (*Muniz, supra*, 496 U.S. at p. 589). Given this underlying function, the United States Supreme Court has declined to apply *Miranda* in situations that "do not implicate the concerns underlying *Miranda*" because "the coercive atmosphere" of custodial

9

interrogation "is lacking" (*Illinois v. Perkins* (1990) 496 U.S. 292, 296), or in situations in which competing concerns "outweigh[] the need for" *Miranda*'s "prophylactic rule" and the time consuming "on-the-scene balancing process" it entails (*New York v. Quarles* (1984) 467 U.S. 649, 657-658).

Questions about the seven categories of basic identifying biographical data listed in *Muniz* during the booking process do not subject suspects to "inherently compelling pressures" that might "compel them to speak" when they would not otherwise do so. Although suspects being booked are most certainly in custody, a booking officer asking them for their name, date of birth and similar biographical data—information that is "likely to be . . . insignificant in the scheme of things" because it is "incriminating only in unusual circumstances"—is not subjecting them to inherently compelling pressures over and above those from merely being in custody. (*Hiibel v. Sixth Judicial Dist. Court* (2004) 542 U.S. 177, 191.) But something more than being in "custody" is required. (*Innis*, *supra*, 446 U.S. at p. 300 ["'interrogation'" "reflect[s] a measure of compulsion above and beyond that inherent in custody itself"].) This is undoubtedly why *Innis* excludes from the definition of "interrogation" "words or actions . . . normally attendant to arrest and custody." (*Id.* at p. 301; *Elizalde*, *supra*, 61 Cal.4th at p. 535 [so noting].)

Moreover, it is critical for law enforcement to know *who* it is admitting into its custody. This competing consideration justifies a rule that dispenses with the otherwise necessary "on-the-scene balancing" as to whether any of the seven categories of basic biographical data might prove incriminating based on the underlying crime and the charges that might be filed in each particular case. Indeed, this case vividly illustrates the

10

importance of this basic biographical information.  Consistent with the state's "'*parens patriae* interest in preserving and promoting the welfare'" of juveniles who are suspected of committing crimes (*Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1225, quoting *Schall v. Martin* (1984) 467 U.S. 253), law enforcement is required by statute to treat minors differently than adults:  Minors must be housed in juvenile halls (not jails) (Welf. & Inst. Code, § 207.1, subd. (a)), and officers must "notify" the minor's parents or caregivers about any arrest and where the minor is being housed (*Id.*, § 627, subd. (a)).  Knowing an arrestee's age is critical to complying with these statutes, and the most logical way to obtain this information is by asking about it during the booking process.  Given these important, competing concerns, having an exception that obviates the need to engage in a case-by-case analysis of the possibly incriminating impact of asking basic biographical questions makes sense, particularly given the rarity with which those questions elicit answers that might prove to be incriminating.  (*Elizalde*, *supra*, 61 Cal.4th at p. 535 [noting how *Muniz*'s questioning "is generally unrelated to crime and unlikely to elicit an incriminating response"].)

In light of this analysis, the trial court did not err in admitting the officer's testimony regarding minor's answers to the booking questions about his age and date of birth, both of which fall squarely within *Muniz*'s categories of basic biographical data.  With that evidence as part of the record, there was sufficient evidence to support the juvenile court's adjudication.

## DISPOSITION

The judgment is affirmed.

**<u>CERTIFIED FOR PUBLICATION.</u>**

_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST

_____, J.
CHAVEZ

12